UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| ADAM KARHU, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br> v.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a/ VPX SPORTS,<br><br>     Defendant. | Civil Action No. _____<br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Adam Karhu, by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1. This is a class action lawsuit on behalf of purchasers of VPX Meltdown Fat Incinerator ("Meltdown" or the "Product"), which is marketed by the Defendant as a "university proven" formula that will "burn fat" for six hours, make the consumer lose weight, and is "the most powerful and university researched fat burner ever." In fact, Meltdown's main ingredient is a large dose of caffeine, which the FDA has determined is not a safe or effective treatment for weight control. Defendant's Meltdown caffeine pills are mixed with a variety of ingredients that have never been clinically proven to be effective treatments for fat loss. The Product is ineffective and worthless.

2.     On October 28, 2010, The National Advertising Division of the Council of Better Business Bureaus (the "NAD"), an investigative unit of the advertising industry's self-regulatory system, issued a report concerning Defendant's claims about Meltdown.  As explained in more detail below, the NAD has recommended that Defendant stop making certain false and misleading claims about Meltdown, including the claim that it is a "Fat Burner," since the Product does not burn fat.    Nevertheless, Defendant continues to assert these false and misleading claims.

3.     It gets worse.   In early 2011, amid allegations that Meltdown's original formulation included illegal controlled substances (the "Controlled Substance Formulation"), Defendant changed Meltdown's formulation slightly.    Instead of controlled substances, Meltdown now contains several ingredients that Defendant's own scientists have found to be "useless" in their experiments (the "Useless Substance Formulation").  For example, "Methyl-Synephrine," an amphetamine analog, was replaced with "Synephrine HCl."    After experimenting with Synephrine, Defendant's scientist noted on its website:

> *Caution: Synephrine DOES NOT WORK!*  I hate to burst your bubble but Synephrine and Synephrine HCl are as *useless as a screen door on a submarine.*[1]

4.     Despite using ingredients Defendant's own scientists found to be ineffective, the efficacy claims on Meltdown's packaging and website have not changed.   These claims were false and misleading with regard to Defendant's earlier Controlled Substance Formulation, as found by the NAD.  They are likewise false and misleading with regards to Defendant's current Useless Substance Formulation.

5.     Plaintiff is a purchaser of Meltdown who asserts claims for violation of the Magnuson Moss Warranty Act, breach of express warranty, breach of the implied warranty of

---

[1] http://www.vpxsports.com/vpx-news-article/the-euphoria-of-meltdown, February 26, 2013 (emphasis added).

merchantability, unjust enrichment, and violation of the consumer protection laws of the states of Florida and New York, on behalf of himself and similarly situated purchasers of Meltdown.

## PARTIES

6.     Plaintiff Adam Karhu is a citizen of New York who resides in Woodmere, New York.

7.     Defendant Vital Pharmaceuticals, Inc. is a Florida corporation with its principal place of business in Davie, Florida.   Defendant promotes, markets, distributes, and sells Meltdown across the United States, including to tens of thousands of consumers in New York.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant has its headquarters office, and does substantial business, in this District. Defendant has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of VPX Meltdown here and is subject to personal jurisdiction in this District.

11.    All conditions precedent to the bringing of any and all causes of action herein have been satisfied including any notice and opportunity for corrective action requirements (Exhibit "A").

## FACTS COMMON TO ALL CAUSES OF ACTION

### False Claims Of Safety And Efficacy

12.    Defendant's marketing and promotion of Meltdown includes numerous false and misleading claims concerning the product's efficacy and mechanism of action.

13.    On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant stop making a number of false and misleading claims about Meltdown.  Despite these demands, Defendant continues to make its false representations.

14.    The NAD specifically demanded that Defendant:

- Stop making the false claim that Meltdown is a "Fat Burner," since the product does not burn fat.

- Stop making the false claims that Meltdown capsules "Burn Fat for 6+ hours and Increase Fat Utilization by 56%."

- Stop making any claims that compare Meltdown to ephedrine and epinephrine, since no reliable basis for comparison exists.

- Stop making any claim about the long-term effects of Meltdown, including "before and after" photographic comparisons, since there is no evidence to support any such claims (together with the representations discussed in the Facts Common To All Causes Of Action, *infra,* the "Misrepresentations").

4

15.    Nevertheless, Defendant has continued to make *every single one* of these false

and misleading claims on its current packaging and website:



 

16.     The active ingredient in Meltdown is caffeine.  However, the FDA has determined there are inadequate data to establish general recognition of the safety or effectiveness of caffeine for the specified use of weight control.  *See* 21 C.F.R. § 310.545(a)(20).

17.     The label and website for Meltdown includes claims that it "removes fat like a Blow Torch," that it is "the most profound fat loss innovation of the decade," and that it is the "longest lasting fat burner."

18.     Meltdown also comes with a diet plan labeled "The Meltdown Diet."  This diet indicates that the product is effective for both "fat loss" and "weight loss."

19.     Each of these statements is false and misleading.  Furthermore, with respect to caffeine, the active ingredient, the FDA has in fact determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control.  *See* 21 C.F.R. § 310.545(20).

**Meltdown's Ingredients**

20.     In early 2011, after at least one federal law suit alleged that one of Meltdown's ingredients, called "Methyl-Synephrine," was an illegal amphetamine analog, Defendant began to use another ingredient called "Synephrine HCl" in its stead.

21.     This change was only reflected in the ingredient list on the side of the product. Nothing else changed.  The packaging and website continued to make the same dubious claims. In fact, Defendant never edited its website to reflect the new substitution.  As of February 25, 2013, Defendant's website still claimed that the product contained Methyl-Synephrine and touted the Product's superiority on that basis.

22.     Defendant reported the results of at least one study which it conducted on Synephrine on its website:

> 20 milligrams of Synephrine is supposed to be a fairly decent fat loss compound similar … to ephedrine.  So we set up a human subject study and tested all the parameters of fat loss using 1) 25 mgs of pure Synephrine then, 2) 50 mgs of pure Synephrine HCl (hydrochloride) and finally, 3) 200 mgs of pure Synephrin HCl. Even when these high amounts of pure synephrine were stabilized with HCl and bound to a polymer-lipid based delivery system, ***thermogenesis was not induced***. Furthermore, energy, heart rate and oxygen uptake did not increase ***nor were any other markers of fat loss apparent!***[2]

Elsewhere, Defendant touts the superiority of Methyl-Synephrine over Synephrine:

> ***Caution:  Synephrine DOES NOT WORK!***  I hate to burst your bubble but Synephrine and Synephrine HCl are as ***useless as a screen door on a submarine.***[3]

23.     At the same time, Defendant also began using an ingredient called "Hordenine HCl" instead of another called "Methyl-Hordenine HCl."   Like Synephrine, Defendant had

---

[2] http://www.vpxsports.com/vpx-news-article/the-euphoria-of-meltdown, February 26, 2013 (emphasis added).
[3] *Id.* (emphasis added)

already experimented with Hordenine HCl and found it ineffective, noting: "I was highly disappointed with the lack of MAO inhibiting capacity of Hordenine and Hordenine HCL [sic]."[4]

24.    Defendant switched to the Useless Substance Formulation in or around early 2011; but all of its claims about Meltdown's efficacy remain the same as they did when it contained the Controlled Substance Formulation.  Curiously, despite the fact that Defendant found in its experiments with ingredients in the Useless Substance Formulation that "thermogenesis was not induced," it still claims that its product provides a thermogenic increase. Incredibly, the purported increase remains at exactly 29%, the same as before the substitution.

25.    Likewise, Defendant represented that despite switching over to ingredients that were "as useless as a screen door on a submarine," Meltdown is still "university proven" to "burn[] fat for 6+ hours," provide a "56% increase in fat utilization," is "273% more potent than Ephedrine-Caffeine," "972% more potent than Ephedrine," and "up to [a] 93% increase in Norepinephrine."    According to Defendant, switching to "useless" ingredients such as Synephrine HCl and Hordenine HCl had no effect on Meltdown's efficacy.

26.    In fact, these ingredient substitutions had no effect on the benefits its product provided:  Defendant's claims about Meltdown's efficacy were false and misleading with regard to its earlier Controlled Substance Formulation, as found by the NAD.  They are likewise false and misleading with regard to its current Useless Substance Formulation.

**Meltdown Is Illegally Distributed And Misbranded Under Federal Law**

27.    Under section 201(g)(1)(B) of the Food, Drug & Cosmetic Act ("FDCA"), 21 U.S.C. § 321(g)(1)(B), articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease are drugs.  Under § 321(g)(1)(C), articles intended to affect the structure or any function of the body of man are also classified as drugs.  Meltdown's labeling and website

---

[4] *Id.*

suggest using Meltdown for weight loss.  Meltdown is therefore a "drug" as defined by 21

U.S.C. § 321(g)(1)(B) and (C).  The FDA also classifies products that include caffeine as an

ingredient for the specified use of weight control as drugs.  *See* 21 C.F.R. § 310.545(a)(20).

28.     Meltdown falls with the definition of a "new drug" because it "is not generally

recognized among experts … as safe and effective for use under the condition prescribed,

recommended, or suggested." 21 U.S.C. § 321(p)(1).  Thus, without FDA approval, it is illegal

to distribute Meltdown in interstate commerce.  21 U.S.C. § 355(a).

29.     Meltdown is thus "misbranded" and bears a "false or misleading label" under 21

U.S.C. § 343.

## FACTUAL ALLEGATIONS CONCERNING THE CLASS REPRESENTATIVE

30.     Plaintiff Adam Karhu purchased one bottle of Meltdown for $35.97 on or about

January 16, 2013.

31.     Mr. Karhu had read the label on the Meltdown packaging and purchased

Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other

Misrepresentations.

32.     Mr. Karhu would not have purchased Meltdown if he had known that the product

and its ingredients were not safe and effective treatments for weight control, and that the

representations concerning the purported benefits of the product were false.

## CLASS REPRESENTATION ALLEGATIONS

33.     Plaintiff seeks to represent a class defined as all persons in the United States who

purchased Meltdown (the "Class") and a subclass of all Class members who purchased the

product in New York (the "New York Subclass").  Excluded from the Class and the New York

Subclass are persons who made such purchase for purpose of resale.

34.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

35.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing and promotion of Meltdown is false and misleading.

36.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials, purchased Meltdown, and suffered a loss as a result of that purchase.

37.     Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

38.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and New York Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial

system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*)**

39.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

40.     Plaintiff brings this Count I individually and on behalf of the members of the Class and New York Subclass against Defendant.

41.     Meltdown is a consumer product as defined in 15 U.S.C. § 2301(1).

42.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

43.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

44.     In connection with the sale of Meltdown, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), by making the Misrepresentations.

45.     In fact, Meltdown does not conform to the Misrepresentations because each of the Misrepresentations is false and misleading.

46.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and Class members.

47.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased Meltdown if the true facts had been known.  Meltdown is ineffective and it is worthless.

## COUNT II
### (Breach Of Express Warranty)

48.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

49.     Plaintiff brings this Count II individually and on behalf of the members of the Class and New York Subclass against Defendant.

50.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller expressly warranted that Meltdown was fit for its intended purpose by making the Misrepresentations.

51.     In fact, Meltdown is not fit for such purposes because each of the Misrepresentations is false and misleading.

52.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased Meltdown if the true facts concerning Meltdown's safety and efficacy had been known.  Meltdown is ineffective and worthless.

## COUNT III
### (Breach Of Implied Warranty Of Merchantability)

53.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

54.     Plaintiff brings this Count III individually and on behalf of the members of the Class and New York Subclass against Defendant.

55.     Defendant as the designer, manufacturer, marketer, distributor, and/or seller impliedly warranted that Meltdown was fit for its intended purpose in that it was a safe and effective treatment for fat loss.

56.     Defendant breached the warranty implied in the contract for the sale of the Meltdown in that Meltdown could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because there is no competent and reliable scientific evidence that Meltdown is a safe and effective treatment for fat loss.  As a result, Plaintiff and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

57.     In reliance upon Defendant's skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and Class members purchased Meltdown for use as a treatment for fat loss.

58.     The Product was not altered by Plaintiff and Class members.

59.     The product was defective when it left the exclusive control of Defendant.

60.     Defendant knew Meltdown would be purchased and used without additional testing for safety or efficacy by Plaintiff and Class members.

61.     Meltdown was defectively designed and unfit for its intended purpose, and Plaintiff and Class members did not receive the goods as warranted.

62.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiff and Class members have been injured and harmed because they would not have purchased Meltdown if the true facts concerning its safety and efficacy had been known. Meltdown is ineffective and worthless.

## COUNT IV
### (Unjust Enrichment)

63.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.     Plaintiff brings this Count IV individually and on behalf of the members of the Class and New York Subclass against Defendant.

65.      Plaintiff and Class members conferred benefits on Defendant by purchasing Meltdown.

66.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Meltdown.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that Meltdown was a safe and effective treatment for fat loss when in fact it was ineffective and worthless, which caused injuries to Plaintiff and Class members because they would not have purchased Meltdown if the true facts had been known.

67.     Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT V
### (Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*)

68.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

69.     Plaintiff brings this Count V on behalf of the members of the Class and New York Subclass against Defendant.

70.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUPTA").   The express purpose of FDUPTA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

71.     Plaintiff and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

72.     Defendant was engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

73.     The sale of Meltdown constituted "consumer transactions" within the scope of the Fla. Stat. §§ 501.201 to 501.213.

74.     Fla. Stat. § 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

75.     Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."   Defendant's unfair and deceptive practices are likely to mislead – and have mislead – the consumer acting reasonably in the circumstances, and violate Fla. Stat. § 501.204 and 21 U.S.C. § 352.

76.     Defendant has violated the FDUPTA by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers, by making the Misrepresentations.

77.     Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for Meltdown, an ineffective and worthless product, which they would not have purchased had they known the true facts.

78.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant.

79.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

80.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff and the Class make claims for damages and attorneys' fees and costs.

**COUNT VI**
**(New York Gen. Bus. Law § 349)**

81.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

82.     Plaintiff brings this Count VI on behalf of himself and the members of the New York Subclass against Defendant.

83.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Misrepresentations.

84.     The foregoing deceptive acts and practices were directed at consumers.

85.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the safety and efficacy of Meltdown to induce consumers to purchase those products.

86.     Plaintiff and members of the New York Subclass were injured as a result because they paid for Meltdown, an ineffective and worthless product, which they would not have purchased had they known the true facts.

87.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## RELIEF DEMANDED

88.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.      For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.      For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on all counts asserted herein;

D.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

17

Dated: April 3, 2013                    Respectfully submitted,


                                        s/Barry L. Davis
                                        Barry L. Davis  (State Bar No. 294977)
                                        Attorney E-Mail:  davis@tdflaw.com
                                        Thornton, Davis & Fein, P.A.
                                        80 SW Eighth Street, Suite 2900
                                        Miami, Florida 33130
                                        Telephone: (305) 446-2646
                                        Facsimile:  (305) 441-2374

                                        Scott A. Bursor (State Bar No. 68362)
                                        Attorney E-Mail:  Email:  scott@bursor.com
                                        **BURSOR & FISHER, P.A.**
                                        888 Seventh Avenue
                                        New York, NY 10019
                                        Telephone: (212) 989-9113

# BURSOR FISHER
P.A.

888 SEVENTH AVENUE
NEW YORK, NY 10019
www.bursor.com

SCOTT A. BURSOR
Tel: 212.989.9113
Fax: 212.989.9163
scott@bursor.com

March 4, 2013

*__Via Certified Mail – Return Receipt Requested__*

Vital Pharmaceuticals, Inc.
1600 North Park Drive
Weston, FL 33326

Re:   *Violation of Magnuson-Moss Act, 15 U.S.C. § 2301, et seq.; Violation of Fla. Stat.*
      *§ 672.607 et seq.*

To Whom It May Concern:

This letter serves as a notice and demand for corrective action on behalf of my client, Adam Karhu, and all other persons similarly situated, arising from breaches of warranty under the Magnuson-Moss Warranty Act and violations of numerous provisions of Florida law including the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 2301 et seq.

You have participated in the design, manufacturing, marketing, and sale of VPX Meltdown Fat Incinerator ("Meltdown") as an over-the-counter fat loss drug. In October, 2010, the National Advertising Division of the Council of Better Business Bureaus (the "NAD") recommended that certain advertising claims made on Meltdown's packaging should be discontinued because they were misleading. The misleading claims identified by the NAD included:

- the claim that Meltdown is a "Fat Burner," since the product does not actually have any ability to burn off fat;

- the claim that Meltdown capsules "Burn Fat for 6+ hours and Increase Fat Utilization by 56%;"

- claims that compare Meltdown to ephedrine and epinephrine, since no reliable basis for comparison exists; and

- claims that concern the long-term effects of Meltdown, including "before and after" photographic comparisons, since there is no evidence to support any such claims.

Nevertheless, you have continued making every single one of these false and misleading claims on Meltdown's packaging and on your website.

**EXHIBIT "A"**

BURSOR&FISHER
P.A.

Thereafter, amid allegations that Meltdown's original formulation included illegal controlled substances (the "Controlled Substance Formulation"), Meltdown's formulation was changed slightly.  Instead of controlled substances, Meltdown now contains several ingredients that your own scientists have found to be "useless" in their experiments (the "Useless Substance Formulation").  For example, Methyl-Synephrine, an amphetamine analog, was replaced with Synephrine HCl.  After experimenting with Synephrine, your scientist noted on your website:

> *Caution:  Synephrine DOES NOT WORK!*  I hate to burst your bubble but Synephrine and Synephrine HCl are as *useless as a screen door on a submarine.*

Likewise, you substituted Hordenine HCl for Methyl-Hordenine.  But your own scientist noted: "I was highly disappointed with the lack of MAO inhibiting capacity of Hordenine and Hordenine HCL [sic]."

Despite using ingredients your own scientists found to be ineffective, the efficacy claims made on Meltdown's packaging and website have not changed.  These claims were false and misleading with regard to your earlier Controlled Substance Formulation, as found by the NAD. They are likewise false and misleading with regards to your current Useless Substance Formulation.

Finally, with respect to caffeine, the active ingredient in Meltdown, the FDA has determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control.  *See* 21 C.F.R. § 310.545(20).

Mr. Karhu purchased Meltdown based on representations on the label and in other marketing and advertising materials which make the representations discussed above.  He would not have purchased Meltdown if he had known that the product and its ingredients were not safe and effective treatments for fat loss, and that the representations concerning the purported benefits of the product were false and misleading.

Mr. Karhu is acting on behalf of a class defined as all persons in the United States who purchased Meltdown (hereafter, the "Class"), and a subclass of class members who purchased Meltdown in the state of New York (the "New York Subclass").

To cure the defects described above, we demand that you (1) cease and desist from further sales of Meltdown, (2) issue an immediate recall of Meltdown; and (3) make full restitution to all purchasers of Meltdown of all purchase money obtained from sales thereof.

We further demand that you preserve all documents and other evidence which refer or relate to any of the above-described practices including, but not limited to, the following:

1.    All documents concerning the development and/or testing of Meltdown;

2.    All documents concerning the advertisement, marketing, promotion, or sale of Meltdown;

3.    All documents concerning communications with any individual involved in the marketing or sale of Meltdown;

BURSOR&FISHER
P.A.

4.      All documents concerning communications with purchasers of Meltdown;

5.      All documents concerning any reformulations of Meltdown;

6.      All documents concerning the sales volumes of Meltdown (in units and/or dollars), and the revenues derived therefrom; and

7.      All documents concerning the identities of Class members who purchased Meltdown.

We are willing to negotiate to attempt to resolve the demands asserted in this letter.  If you wish to enter into such discussions, please contact me immediately.  If I do not hear from you promptly, I will conclude that you are not interested in resolving this dispute short of litigation.  If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents promptly.

Very truly yours,

Scott A. Bursor