UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-60768-CIV-COHN/SELTZER

ADAM KARHU, on behalf of himself
and all others similarly situated,

     Plaintiff,

v.

VITAL PHARMACEUTICALS, INC.,
d/b/a VPX SPORTS,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendant's Motion to Dismiss First

Amended Complaint for Failure to State a Claim [DE 21].  The Court has considered

the motion, Plaintiff's response [DE 28], Defendant's reply [DE 29], the record in this

case, and is otherwise fully advised in the premises.

### I. BACKGROUND

According to the First Amended Complaint ("FAC") [DE 15], which is the

operative pleading in this action, Defendant Vital Pharmaceuticals, Inc., d/b/a VPX

Sports, is a Florida corporation with its principal place of business in Davie, Florida.

DE 15 ¶ 7.  Defendant manufactures and markets a dietary supplement called VPX

Meltdown Fat Incinerator ("Meltdown"), which is advertised as a product that "burns fat"

for six hours, helping the consumer lose weight.  See id. ¶¶ 1, 15, 44.  Meltdown's

packaging asserts that its fat-burning claims are "backed by 5 university studies."  Id.

¶ 15.  On January 16, 2013, Plaintiff Adam Karhu purchased one bottle of Meltdown

capsules from a website, www.bodybuilding.com.  Id. ¶ 25.  Plaintiff alleges that the claims made by Defendant in its packaging and on its website are false and misleading, and that Meltdown has "never been clinically proven to be effective for fat loss."  Id. ¶ 1.

In support, the FAC cites to an October 28, 2010 report about Meltdown issued by the National Advertising Division of the Council of Better Business Bureaus ("NAD"), an investigative unit of the advertising industry's self-regulatory body.  In the report, the NAD allegedly demanded that Defendant:

- Stop making the false claim that Meltdown is a "Fat Burner," since the product does not burn fat.

- Stop making the false claims that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%."

- Stop making any claims that compare Meltdown to ephedrine and epinephrine, including that it is "273% more potent that ephedrine-caffeine" and "972% more powerful than epinephrine," since no reliable basis for comparison exists.

- Stop making any claim about the long-term effects of Meltdown, including "before and after" photographic comparisons, since there is no evidence to support any such claims [ . . . ].

Id. ¶¶ 14, 16 (collectively referred to as Defendant's "Express Misrepresentations").

Moreover, Plaintiff alleges that Defendant knew that its ingredients were ineffective.  One of the ingredients listed on Meltdown's packaging is "Synephrine HCl."

Id. ¶¶ 18-19.  However, according to the FAC, Defendant's own scientist warned as follows:

> **Caution: _Synephrine DOES NOT WORK!_**  I hate to burst your bubble by Synephrine and Synephrine HCl are as **_useless as a screen door on a submarine."_**

Id. ¶ 20.  Plaintiff further alleges that Meltdown contains an ingredient called "Hordenine

2

HCl," even though Defendant had experimented with this ingredient and come away "highly disappointed with [its] lack of MAO inhibiting capacity. . . . " Id. ¶ 21. Additionally, Defendant allegedly advertises that Meltdown "provides a thermogenic increase," despite Defendant's own experiments with the product's ingredients which found that "thermogenesis was not induced." Id. ¶ 22.

On April 3, 2013, Plaintiff Adam Karhu filed this class-action suit against Defendant, on behalf of all purchasers of Meltdown in the United States, as well as a subclass who purchased the product in New York. See id. ¶ 28. On May 7, 2013, Defendant filed a Motion to Dismiss for Failure to State a Claim [DE 7] ("First Motion to Dismiss"). On May 28, 2013, Plaintiff filed the FAC, and the Court subsequently denied as moot the First Motion to Dismiss. See DE 16. In the FAC, Plaintiff brings the following six claims for relief: (i) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.; (ii) breach of express warranty; (iii) breach of implied warranty of merchantability; (iv) unjust enrichment; (v) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Florida Statutes § 501.201, et seq.; and (vi) violation of New York General Business Law § 349. In the instant motion, Defendant seeks dismissal of all counts of the FAC. Plaintiff opposes the motion.

## II. MOTION TO DISMISS STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give

the defendant fair notice of what the . . . claim is and the grounds upon which it rests."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2);
and Conley v. Gibson, 355 U.S. 41, 47 (1957)).  "While a complaint attacked by a Rule
12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's
obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than
labels and conclusions, and a formulaic recitation of the elements of a cause of action
will not do."  Twombly, 550 U.S. at 555 (citations omitted).  "To survive a motion to
dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a
claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the factual allegations in
the complaint as true, and accept all reasonable inferences therefrom.  Jackson v.
Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  Nevertheless, the Court
may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no
construction of the factual allegations will support the cause of action."  Marshall Cnty.
Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

In the present motion, Defendant argues that the entire FAC should be
dismissed for four reasons: (1) the FAC is a "shotgun pleading"; (2) the FAC is "false on
its face;" (3) the FAC relies exclusively on documents from NAD, and thus fails to assert
any factual allegations; and (4) that this Court's resolution of the claims would invade
the primary jurisdiction of the United States Food and Drug Administration ("FDA") and
Federal Trade Commission ("FTC").  Defendant further argues that each of Plaintiff's

4

claims should be dismissed for failure to state the necessary elements for relief.  The Court will address each of these arguments in turn.

### A. Shotgun Pleading

Defendant asserts that the FAC is a shotgun pleading because it does not indicate which facts apply to which causes of action.  The Court agrees.  A shotgun pleading is one which "fails to adequately link a cause of action to its factual predicates."  Lampkin-Asam v. Volusia Cnty. Sch. Bd., 261 F. App'x 274, 277 (11th Cir. 2008).  "The Eleventh Circuit has had much to say about shotgun pleadings, none of which is favorable."  Jovine v. Abbott Labs., Inc., 795 F. Supp. 2d 1331, 1336-37 (S.D. Fla. 2011) (citing Davis v. Coca-Cola Bottling Co., 516 F.3d 955, 979 n. 54 (11th Cir. 2008) ("[S]ince 1985 we have explicitly condemned shotgun pleadings upward of fifty times."); see also Strategic Income Fund, LLC v. Spear, Leeds & Kellogg Corp., 305 F.3d 1293, 1295 n.9 (11th Cir. 2002) ("This court has addressed the topic of shotgun pleadings on numerous occasions in the past, often at great length and always with great dismay.").  Typically, such a pleading fails to comply with Rule 8(a)(2), requiring that the complaint contain a "short and plain statement of the claim," as well as Rule 8(d), which states that "[e]ach allegation [in a pleading] must be simple, concise, and direct."  Burch v. Baker, No. CV-11-S-3770-NW, 2013 U.S. Dist. LEXIS 354, at *8-9 (N.D. Ala. Jan. 2, 2013) (citing Fed. R. Civ. P. 8(a)(2), 8(d)).  Here, the FAC is clearly a shotgun pleading.  While it contains a section titled "Facts Common to All Causes of Action," and goes on to generally describe the six causes of action, it does not plead the specific factual predicate for each claim, or link particular facts to the individual causes of action.  See DE 15 ¶¶ 12-27.  Consequently, the Court will dismiss the FAC

in its entirety for this reason.  Nonetheless, the Court will address the parties' remaining arguments to guide the parties' preparation of prospective pleadings.

### B. Alleged Falsity of the Pleadings

Defendant next claims that Plaintiff's allegations are false and unsupportable. Defendant purports to attach five university studies which substantiate claims made in the advertising of Meltdown.  However, at the motion to dismiss stage, the Court accepts Plaintiff's well-pleaded allegations as true.  Thus, the Court finds this argument to be without merit.

### C. Reliance on the Findings of NAD

Defendant contends that the FAC does not contain sufficient factual content to support any of the claims because it relies exclusively on the findings of the NAD and its appellate body.  This argument is unavailing, as the FAC does not rely solely on the NAD's findings.  To the contrary, from paragraphs 20 through 24, Plaintiff cites to Defendant's own studies which allegedly state that Meltdown's formula was ineffective at facilitating weight loss.  DE 15 ¶¶ 20-24.  Moreover, Defendant provides no reason why Plaintiff cannot use the NAD's findings as part of the factual basis for its claims. Indeed, Plaintiff may reference them as evidence that an industry group found Defendant's advertising to be misleading.  Accordingly, the Court will not dismiss the FAC for lack of factual basis.

### D. Primary Jurisdiction

Defendant asserts that this action should be dismissed because the Court's resolution of this case would invade the primary jurisdiction of the United States Food

and Drug Administration ("FDA") and Federal Trade Commission ("FTC").  The primary jurisdiction doctrine "comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body."  Axiom Worldwide, Inc. v. Becerra, No. 8:08-cv-1918-T-27-TBM, 2009 U.S. Dist. LEXIS 40214, at *15 (M.D. Fla. May 13, 2009) (quoting Alpharma, Inc. v. Pennfield Oil Co., 411 F.3d 934, 938 (8th Cir. 2005)). Invoking the doctrine allows a court to benefit from an agency's experience and expertise, and promotes the uniform administration of the regulatory scheme administered by the agency.  Flo-Sun, Inc. v. Kirk, 783 So. 2d 1029, 1037 (Fla. 2001) (citing Key Haven Associated Enters. v. Bd. of Trustees of the Internal Improvement Trust Fund, 427 So. 2d 153, 157 (Fla. 1982)).  Generally, the doctrine will apply where there is "(1) a need to resolve an issue that (2) has been placed by Congress within the jurisdiction  of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory authority that (4) requires expertise or uniformity in administration."  Clark v. Time Warner Cable, 523 F.3d 1110, 1115 (9th Cir. 2008) (internal quotations and citations omitted).  However, the application of the doctrine "is a matter of deference, policy and comity, not subject matter jurisdiction."  Id. at 1037-38.

Defendant asserts that Plaintiff is essentially asking the Court to regulate the formulation, labeling, and advertisement of a dietary supplement.  Defendant argues that those are functions that Congress has specifically assigned to the FDA and FTC, and that substantial technical expertise is required to administer these tasks.  Plaintiff responds that his claims pertain to misrepresentations in labeling, and are brought

7

pursuant to state and federal consumer protection laws which are within the Court's competency to enforce.

The Court recently handled a similar issue in In re Horizon Organic Milk Plus DHA Omega-3 Marketing and Sales Practice Litigation, No. 12-md-02324-JAL, 2013 U.S. Dist. LEXIS 105830 (S.D. Fla. July 24, 2013).  In Horizon, the defendants' product label stated that the product was fortified with DHA Omega-3, and that "DHA Omega-3 Supports Brain Health."  2013 U.S. Dist. LEXIS 105830 at *7.  The plaintiffs brought claims for consumer fraud, unjust enrichment, and breach of warranty, asserting that the label's claims were false and misleading.  The defendants argued that whether and to what extent their claims regarding DHA Omega-3 were substantiated was within the primary jurisdiction of the FDA.  Judge Lenard rejected this argument, finding that

> Plaintiffs' claims rest on the determination of whether WhiteWave's brain health representations on its products' labeling, in its advertisements, and on its website are false and/or misleading and whether customers purchased WhiteWave's products in reliance on these representations. . . . "'[T]his is not a tehcnical area in which the FDA has greater technical expertise than the courts – [as] every day courts decide whether conduct is misleading.'"  Rikos v. Procter & Gamble Co., 782 F. Supp. 2d 522, 530 (S.D. Ohio 2011) (quoting Lockwood v. Conagra Foods, Inc., 597 F. Supp. 2d 1028, 1035 (N.D. Cal. 2009).

Id. at *95-96.  Judge Lenard further noted that the primary jurisdiction doctrine is generally not applied unless the party seeking agency referral provides evidence that the agency has taken an interest in investigating the claims at issue.  Id. at 103-04 (citing  Rikos, 782 F. Supp. 2d at 530).

The Court finds Judge Lenard's reasoning to be applicable in the instant action. Here, Plaintiff's claims depend primarily on whether Defendant's fat-burning representations on their packaging and website are false or misleading, and whether

customers relied on these representations in purchasing the product.  Determining whether a manufacturer has misled consumers is squarely within the judicial function, and does not require the special expertise of the FDA or the FTC.  Moreover, while Defendant demonstrates that Plaintiff could bring Meltdown to the FDA or FTC's attention, Defendant does not make a showing that either agency has actually taken an interest in investigating the product.  Accordingly, the Court finds that its ruling on Plaintiff's claims would not interfere with the FDA or FTC's regulatory scheme, and the application of the primary jurisdiction doctrine would be inappropriate in this case.

### E. Failure to State a Claim

As noted above, Defendant moves to dismiss each count of the FAC for failure to state a claim upon which relief may be granted.  The Court will proceed to address the motion as it pertains to each count.

### 1. Counts I and II

In Count I, Plaintiff alleges that Defendant violated the MMWA by making false and misleading written representations about Meltdown.  In Count II, Plaintiff brings a claim for breach of express warranty based on the same facts.  Defendant asserts that the MMWA incorporates state law causes of action regarding express warranties, and that Florida law requires privity of contract in order to bring a breach of express warranty claim.  Plaintiff alleges that he purchased Meltdown from the website, www.bodybuilding.com, rather than from Defendant directly.  See DE 15 ¶ 25. Therefore, because Plaintiff does not allege privity of contract, Defendant argues that both Counts I and II must be dismissed.

Some courts have held that the MMWA incorporates state law causes of action

9

as to both express and implied warranties, see, e.g., Hill v. Hoover, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012), while others have found that it only incorporates state law with regard to implied and oral warranties, but creates an independent cause of action for express written warranties, see, e.g., Rentas v. DaimlerChrysler Corp., 936 So. 2d 747, 750-51 (Fla. 4th DCA 2006).  Courts that have found that the MMWA creates an independent cause of action for express written warranties have consistently found that such an action can be brought notwithstanding a lack of transactional privity. See Borchardt v. Mako Marine Int'l, Inc., No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150, at *15 (S.D. Fla. May 24, 2011); Fed. Ins. Co. v. Lazzara Yachts of N. Am., Inc., No. 8:09-CV-T-27MAP, 2010 U.S. Dist. LEXIS 28865, at *17 (M.D. Fla. Mar. 25, 2010) (citing Yvon v. Baja Marine Corp., 495 F. Supp. 2d 1179, 1183 n.4 (N.D. Fla. 2007)); Rentas, 936 So. 2d at 751.

However, even if the MMWA incorporates Florida law with regard to all breach of warranty claims, privity of contract would not be required to sustain Plaintiff's claim. While privity is generally necessary for breach of express warranty claims, see, e.g., Weiss v. Johansen, 898 So. 2d 1009, 1011 (Fla. 4th DCA 2005), courts have relaxed this requirement where the express warranty was clearly intended to cover subsequent purchasers.  See Fed. Ins. Co., 2010 U.S. Dist. LEXIS 28865 at *18-20; see also, Mardegan v. Mylan, No. 10-14285-CIV-MARTINEZ-LYNCH, 2011 U.S. Dist. LEXIS 89787, at *16-19 & n.4 (S.D. Fla. Aug. 12, 2011) (noting that "courts applying Florida law have found exceptions allowing express warranty claims to proceed even absent privity," and that a claim's success depends on the particular facts of the case).

The Court addressed a factual situation similar to the present one in Smith v.

10

WM. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009).  In Wrigley, the

plaintiff brought an MMWA claim for breach of express warranty for misleading

statements made on the packaging of Defendant's chewing gum.  663 F. Supp. 2d at

1337.  The defendant, relying on T.W.M. v. American Medical Systems, 886 F. Supp.

842, 844 (N.D. Fla. 1995), argued that the claim must fail because the parties are not in

privity of contract.  The Court rejected this argument, noting that, while Florida courts

had not expressly ruled on whether privity is required for an express warranty claim,

"several Florida courts discussing warranty claims under the [MMWA] have dismissed

implied warranty claims against a manufacturer for lack of privity while allowing express

warranty claims to go forward."  Id. at 1342 (citing, e.g., Mesa v. BMW of N. Am., 904

So. 2d 450, 458 (Fla. 3d DCA 2005); David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d

1309 (S.D. Fla. 2009)).  In analyzing whether privity was required in that case, the Court

found two factors to be particularly important.  First, the Court distinguished the case

from T.W.M., which involved a defective surgical implant, because the plaintiff in

T.W.M. could reasonably rely on a learned intermediary – his doctor – to give him

relevant information regarding the product and its warranties.  Id. at 1343.  With

chewing gum, on the other hand, the end-purchaser could not look to the retailer of the

product – i.e., the cashier at a convenience store – for such information.  Second, the

warranty at issue was contained on the product's packaging, and therefore was clearly

meant to be relied upon by the consumer.  See id.  Based on these facts, the Court

held that the plaintiff stated a valid claim under the MMWA, despite the lack of privity.

Id.

        Defendant in this case also relies on T.W.M. for the proposition that privity is

required in express warranty cases.  For the reasons stated in Wrigley, such reliance is misplaced.  Here, the product in question is a dietary supplement sold online.  There are no facts in the pleadings that indicate that Plaintiff could expect to receive relevant scientific information about Meltdown's ingredients from the retailer.  Moreover, like the warranty in Wrigley, the express warranties in this case were contained on the packaging and in the advertisements, both clearly directed toward the end-purchaser.  Accordingly, based on the particular facts of this case, privity is not required to state a claim for breach of express warranty, and Plaintiff will be permitted to replead Counts I and II to conform with Rule 8.

### 2. Count III

In Count III, Plaintiff alleges that Defendant breached an implied warranty of merchantability because the goods were not of average quality, and the goods were unfit for their intended and ordinary purpose.  As with Counts I and II, Defendant contends that Count III must be dismissed for lack of privity between the parties.  Here, Defendant's argument has greater merit.  Indeed, under Florida law, it is well-established that "a plaintiff cannot recover economic losses for breach of implied warranty in the absence of privity."  Mesa, 904 So. 2d at 458 (citing, e.g., Kramer v. Piper Aircraft Corp., 520 So. 2d 37 (Fla. 1988)); see also Mardegan, 2011 U.S. Dist. LEXIS 89787 at *15-16 (dismissing a breach of implied warrant claim for a failure to allege privity).

Plaintiff responds that, contrary to Defendant's assertion, the parties are in privity.  Plaintiff argues that courts have found privity, even when the plaintiff did not buy directly from the defendant, "where the [defendant's] representative had direct contacts

12

with the purchaser." Carnival Corp. v. Rolls-Royce PLC, No. 08-23318-CIV-SEITZ, 2009 U.S. Dist. LEXIS 107261, at *9-10 (S.D. Fla. Nov. 17, 2009) (citing Cedars of Lebanon Hosp. Corp. v. European X-Ray Distribs. of Am., Inc., 444 So. 2d 1068, 1072 (Fla. 3d DCA 1984)).  Plaintiff claims that Defendant made direct representations to Plaintiff through Meltdown's label, thereby placing the parties in privity.  This argument is unavailing.  In Carnival Corp. and Cedars of Lebanon, the manufacturer-defendant or his representative was significantly and directly involved in the sale to the plaintiff. See Carnival Corp., 2009 U.S. Dist. LEXIS 107261 at *4-6 (defendants met with plaintiffs and made specific representations about the merchantability of the goods in question); Cedars of Lebanon, 444 So. 2d at 1072 (defendant's sales representatives called the plaintiff and made direct representations about the quality of the goods). Here, while Defendant's labeling was aimed at consumers, it does not amount to the type of substantial and direct contacts that created privity in the aforementioned cases. See Cedars of Lebanon, 444 So. 2d at 1072 n.4 (emphasizing that it was the direct contacts between the manufacturer and consumer that permitted a finding of privity).

In the alternative, Plaintiff alleges that the retailer, bodybuilding.com, was an agent of Defendant.  Plaintiff argues that its privity with Defendant's agent is sufficient to establish privity with Defendant.  This argument is unpersuasive.  Florida courts have generally found that a plaintiff's privity with a defendant's agent, by itself, is not enough to create privity with the defendant.  Rather, it is necessary to look at the relationship between the plaintiff and defendant themselves to determine the existence of privity. For instance, in Bland v. Freighliner, LLC, 206 F. Supp. 2d 1202, 1206-07 (M.D. Fla. 2002), cited by Plaintiff, the plaintiff bought a truck from a dealer, but sued the

13

manufacturer.  The court found privity between the plaintiff and manufacturer because, in the plaintiff's contract with the dealer, the names of the dealer and manufacturer were "used almost interchangeably."  206 F. Supp. 2d at 1207.  The contract identified the manufacturer when waiving the dealer's liability, and permitted the plaintiff to return the vehicle to any of manufacturer's dealers for repair.  Id.  Based on these facts, the Court found that there was a sufficiently direct relationship between the parties to support a finding of privity.  Id.; see also Foote v. Green Tree Acceptance, Inc., 597 So. 2d 803, 804-05 (Fla. 1st DCA 1991) (finding privity between vehicle purchaser and manufacturer when the warranty agreement required the purchaser to contact the manufacturer for repairs if the dealer failed to repair the vehicle).  By contrast, courts have repeatedly found that merely purchasing a product from an authorized dealer does not establish privity with the manufacturer.  See Rentas, 936 So. 2d at 751; Mesa, 904 So. 2d at 458; Cesarani v. Am. Honda Motor Co., 916 So. 2d 843, 847 (Fla. 2d DCA 2005).

Here, the FAC alleges only that Plaintiff "understood that in making the sale, www.bodybuilding.com was acting with the knowledge and approval of Defendant and/or as the agent of Defendant."  DE 15 ¶ 27.  This allegation, by itself, is insufficient to support a finding of privity with Defendant.  Accordingly, Count III will be dismissed with prejudice.

## 3. Count IV

In Count IV, Plaintiff alleges that Defendant was "unjustly enriched in retaining the revenues from Plaintiff and Class members' purchases of Meltdown."  DE 15 ¶ 61. Defendant moves to dismiss Count IV on two grounds.  First, Defendant claims that

14

Plaintiff has failed to plead sufficient facts to establish an unjust enrichment claim.  To

state a claim for unjust enrichment, a party must plead that:

> 1) the plaintiff has conferred a benefit on the defendant; 2) the defendant
> has knowledge of the benefit; 3) the defendant has accepted or retained
> the benefit conferred; and 4) the circumstances are such that it would be
> inequitable for the defendant to retain the benefit without paying fair value.

Della Ratta v. Della Ratta, 927 So. 2d 1055, 1059 (Fla. 4th DCA 2006) (citations

omitted).  Defendant argues that Plaintiff has not alleged that Defendant had

knowledge of a benefit that was inequitable, and therefore the claim is inadequately

pleaded.  This assertion is without merit.  The FAC alleges that:

> 59.   Plaintiff and Class members conferred benefits on Defendant by
>       purchasing Meltdown.
>
> 60.   Defendant has knowledge of such benefits.
>
> 61.   Defendant has been unjustly enriched in retaining the revenues
>       derived from Plaintiff and Class members' purchase of Meltdown.
>       Retention of those moneys under these circumstances is unjust
>       and inequitable because Defendant misrepresented that Meltdown
>       was a safe and effective treatment for fat loss when in fact it was
>       ineffective and worthless, which caused injuries to Plaintiff and
>       Class members because they would not have purchased Meltdown
>       if the true facts had been known.

DE 15 ¶¶ 59-61.  There is no additional requirement that Defendant be aware that

retention of the benefit would be inequitable.

Defendant further contends that Count IV should be dismissed because unjust

enrichment is an equitable claim, and Plaintiff has an adequate remedy at law.  The

Eleventh Circuit recently addressed this issue in State Farm Mutual Automobile

Insurance Company v. Physicians Injury Care Center, Inc., stating that:

> It is generally true that equitable remedies are not available under Florida
> law when adequate legal remedies exist.  Williams v. Bear Stearns & Co.,

725 So. 2d 397, 400 (Fla. 5th DCA 1998).  However, that rule does not
apply to unjust enrichment claims.  Id.  "It is only upon a showing that an
express contract exists [between the parties] that the unjust enrichment
. . . count fails." Id.  Thus, to the extent that [the plaintiff] did have
adequate legal remedies, those remedies did not bar its unjust enrichment
claim.

427 F. App'x 714, 722 (11th Cir. 2011).  Therefore, until an express contract is proved,

Defendant's motion to dismiss Count IV with prejudice is premature.  Moreover, as

Plaintiff points out, the Federal Rules permit a party to plead alternative legal and

equitable theories for recovery.  See Fed. R. Civ. P. 8(a)(3).  Thus, "while a plaintiff may

not recover under both legal and equitable theories, there is no basis for dispensing

with Plaintiff's unjust enrichment claim at the motion to dismiss stage."  Muzuco v.

Re$ubmitlt, LLC, No. 11-62628-CIV-SCOLA, 2012 U.S. Dist. LEXIS 110373, at *22

(S.D. Fla. Aug. 7, 2012).  Therefore, Count IV will be dismissed without prejudice.

### 4. Count V

Count V of the FAC alleges that Defendant's labeling and advertising of

Meltdown as a fat-burning product amounted to an unfair and deceptive practice

injurious to consumers, in violation of FDUTPA.  Defendant moves to dismiss Count V

on the ground that FDUTPA only protects in-state consumers, or out-of-state

consumers where the offending conduct occurred entirely within the State of Florida.

Plaintiff responds that there are no geographical limitations within the language of the

statute, and that it is applicable to non-residents even when the fraudulent conduct

occurred outside the state.  The parties also disagree as to which state the fraudulent

conduct took place in.

*a. FDUTPA applies to fraudulent conduct taking place in Florida.*

On a few occasions, Florida courts have held that FDUTPA is applicable only to claims brought by in-state consumers. See Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc., 760 So. 2d 1037, 1042 (Fla 2d DCA 2000) (declining to certify a nationwide class-action FDUTPA claim, and holding that "only in-state consumers can pursue a valid claim under [FDUTPA]."); Coastal Physician Servs. of Broward Cnty. v. Ortiz, 764 So. 2d 7 (Fla. 4th DCA 1999) (concluding that FDUTPA was enacted to protect in-state consumers). More recently, however, courts have expanded coverage to claims of out-of-state consumers if the offending conduct occurred predominantly or exclusively in Florida. See Millennium Communs. & Fulfillment, Inc. v. Office of the AG, Dep't of Legal Affairs, 761 So. 2d 1256, 1261-62 (Fla. 3d DCA 2000) (holding that FDUTPA applies to claims brought by any consumer where the allegations show "that the offending conduct occurred entirely within this state"); Barnext Offshore, Ltd. v. Ferretti Group USA, Inc., No. 10-23869-CIV-ALTONAGA/SIMONTON, 2012 U.S. Dist. LEXIS 61710, at *16-20 (S.D. Fla. May 2, 2012) (finding that FDUTPA was applicable to claims of an out-of-state consumer, even though certain relevant events took place outside Florida); 2P Commercial Agency S.R.O. v. Familiant, No. 2:11-cv-FtM-29SPC, 2012 U.S. Dist. LEXIS 179628, at *10-12 (citing Millennium and Barnext, and finding that FDUTPA applies to claims involving fraudulent conduct that occurred exclusively in Florida).

The Court finds that the reasoning in Millennium and its progeny provides the fairest reading of FDUTPA's text and stated purpose. Nothing in the language of the statute suggests that it is limited to transactions involving Florida consumers. See Fla.

17

Stat. §§ 501.202- 501.204; see also Millennium, 761 So. 2d at 1262 (noting that, while other states' consumer statutes contain geographic or residential restrictions, FDUTPA does not).  Moreover, "one of the three enumerated purposes of FDUTPA is '[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce.'" 2P Commercial Agency, 2012 U.S. Dist. LEXIS 179628 at *12 (quoting Fla. Stat. § 501.202(2)).  FDUTPA does not limit the term "consuming public" to Florida residents. Id.  Thus, the Court concludes that FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida.

*b. Defendant's alleged fraudulent conduct took place in Florida.*

Defendant argues that, because Plaintiff purchased and consumed the product in New York, there is not a sufficient nexus between the alleged tort and the State of Florida.  The Court disagrees.  Plaintiff alleges that Defendant is a Florida corporation, and that its principal place of business is located in Davie, Florida.  See DE 15 ¶ 7.  The claims in this action are based on Defendant's alleged misrepresentations that it made on its own website and on the label of its product.  Thus, it is reasonable to infer that all of Defendant's alleged misconduct took place in Florida.  While Plaintiff is a New York resident and may have been injured in New York, "the place of injury is less significant in the case of fraudulent misrepresentations." Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 635 (S.D. Fla. 2008) (quoting Restatement (Second) of Conflict of Laws § 145 cmt. e (1971)).  Moreover, in "[a]n action based upon deceptive representations made on a centralized website . . . [the Court] should give greater weight to the

18

Defendant['s] location as opposed to the place fo injury."  Costa v. Kerzner Int'l Resorts, Inc., No. 11-60663-CV-COHN, 2011 U.S. Dist. LEXIS 66921, at *13 (S.D. Fla. June 23, 2011).  Accordingly, because Defendant's alleged fraudulent activities took place in Florida, Plaintiff will be dismissed without prejudice, and Plaintiff may replead Count V to comply with Rule 8.

5. Count VI

In Count VI, Plaintiff brings a claim under New York General Business Law § 349 for unfair and deceptive trade practices related to the packaging and advertising of Meltdown.  Defendant moves to dismiss Count VI on four grounds, each of which is unavailing.  First, Defendant asserts that, under Carnegie-Mellon University v. Cohill, 484 U.S. 343 (1988), "the district court has a powerful reason to choose not to continue to exercise jurisdiction" over a state-law claim.  DE 21 at 17.  Cohill concerned a district court's discretion in exercising pendent jurisdiction over state-law claims.  The instant claim is brought pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), conferring original federal jurisdiction over class actions so long as there is minimal diversity, at least 100 class members, and more than $5,000,000 in controversy. See DE 15 ¶ 9; 28 U.S.C. § 1332(d).  These jurisdictional facts are alleged and, to this point, undisputed by Defendant.  See DE 15 ¶ 9.  Accordingly, the Court finds that the exercise of jurisdiction over this claim is appropriate.

Second, Defendant argues that Plaintiff has failed to plead sufficient damages to recover under § 349.  Defendant contends that Plaintiff only alleges $35.97 in damages, and that the statute has a $50.00 threshold for recovery.  This argument is inconsistent with the plain language of the provision.  Section 349(h) provides a private

right of action allowing a party "to recover his actual damages or fifty dollars, whichever is greater."  N.Y. Gen. Bus. Law § 349(h).  Thus, if a plaintiff claims less than $50.00 in damages, he can nonetheless recover up to $50.00 if he prevails in his claim.  The Court fails to discern any minimum threshold amount to bring a claim under the statute.

Third, Defendant asserts that Plaintiff cannot show "actual damages" because he has only pled monetary harm, rather than physical harm.  However, as Plaintiff notes, New York courts have routinely held that monetary harm is sufficient to bring a claim under § 349.  See Ackerman v. Coca-Cola Co., No. CV-09-0395 (JG) (RML), 2010 U.S. Dist. LEXIS 73156, at *88 (E.D.N.Y. July 21, 2010) ("Injury is adequately alleged under [§ 349] . . . by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations.") (citing Jenrow v. Wendy's Int'l., Inc., No. 07 Civ. 3971 (LTS) (THK), 2007 U.S. Dist. LEXIS 85104, at *8-9 (S.D.N.Y. Nov. 15, 2007)).

Fourth, Defendant claims that § 349(d) specifically allows for the defense of primary jurisdiction.  This is incorrect.  Subsection (d) provides as follows:

> In any such action [brought under the statute] it shall be a complete defense that the act or practice is, or if in interstate commerce would be, subject to **and complies with** the rules and regulations of, and the statutes administered by, the federal trade commission or any official department, division, commission or agency of the United States as such rules, regulations or statute are interpreted by the federal trade commission or such department, division, commission or agency of the federal courts.

N.Y. Gen. Bus. Law § 349(d) (emphasis added).  Defendant has not provided any evidence that it has complied with applicable federal regulations.  Thus, Count VI will be dismissed without prejudice.

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** as follows:

1.      Defendant's Motion to Dismiss First Amended Complaint for Failure to

State a Claim [DE 21] is **GRANTED**;

2.      Counts I, II, IV, V, and VI are **DISMISSED without prejudice**;

3.      Count III is **DISMISSED with prejudice**; and

4.      Plaintiff shall file a Second Amended Complaint by no later than **August**

**19, 2013**.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this 9th day of August, 2013.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF.