UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

| | |
|---|---|
| ADAM KARHU, on behalf of himself and all others similarly situated,<br><br>      Plaintiff,<br><br> v.<br><br>VITAL PHARMACEUTICALS, INC., d/b/a/ VPX SPORTS,<br><br>      Defendant. | Civil Action No. 13-cv-60768-JIC<br><br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff Adam Karhu, by and through his attorneys, files the instant Second Amended Class Action Complaint and makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.  This is a class action lawsuit on behalf of purchasers of VPX Meltdown Fat Incinerator ("Meltdown" or the "Product"), which is marketed by Defendant as a "university proven" formula that will "burn fat" for six hours, make the consumer lose weight, and is "the most powerful and university researched fat burner ever." Meltdown's ingredients have never been clinically proven to be effective for fat loss. The Product is ineffective and worthless.

2.  On October 28, 2010, The National Advertising Division of the Council of Better Business Bureaus (the "NAD"), an investigative unit of the advertising industry's self-regulatory system, issued a report concerning Defendant's claims about Meltdown. As explained in more detail below, the NAD has recommended that Defendant stop making certain false and

misleading claims about Meltdown, including the claim that it is a "Fat Burner," since the Product does not burn fat.   Nevertheless, Defendant continues to assert these false and misleading claims.

3.     It gets worse.   In early 2011, amid allegations that Meltdown's original formulation included illegal controlled substances (the "Controlled Substance Formulation"), Defendant changed Meltdown's formulation slightly.   Instead of controlled substances, Meltdown now contains several ingredients that Defendant's own scientists have found to be "useless" in their experiments (the "Useless Substance Formulation").   For example, "Methyl-Synephrine," an amphetamine analog, was replaced with "Synephrine HCl."   After experimenting with Synephrine, Defendant's scientist noted on its website:

> *Caution:  Synephrine DOES NOT WORK!*  I hate to burst your bubble but Synephrine and Synephrine HCl are as *useless as a screen door on a submarine.*[1]

4.     Despite using ingredients Defendant's own scientists found to be ineffective, the efficacy claims on Meltdown's packaging and website have not changed.   These claims were false and misleading with regard to Defendant's earlier Controlled Substance Formulation, as found by the NAD.   They are likewise false and misleading with regards to Defendant's current Useless Substance Formulation.

5.     Plaintiff is a purchaser of Meltdown who asserts claims for violation of the Magnuson Moss Warranty Act ("MMWA"), breach of express warranty, unjust enrichment, and violation of the consumer protection laws of the states of Florida and New York, on behalf of himself and similarly situated purchasers of Meltdown.

---

[1]   http://www.vpxsports.com/vpx-news-article/the-euphoria-of-meltdown,  February  26,  2013 (emphasis added).

## PARTIES

6.     Plaintiff Adam Karhu is a citizen of New York who resides in Woodmere, New York.

7.     Defendant Vital Pharmaceuticals, Inc. is a Florida corporation with its principal place of business in Davie, Florida.   Defendant promotes, markets, distributes, and sells Meltdown across the United States, including to hundreds of thousands of consumers in New York.   Plaintiff reserves the right to amend this Complaint to add different or additional defendants, including without limitation any officer, director, employee, supplier, or distributor of Defendant who has knowingly and willfully aided, abetted, or conspired in the false and deceptive conduct alleged herein.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

9.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendant has its headquarters office, and does substantial business, in this District. Defendant has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution, and sale of Meltdown here and is subject to personal jurisdiction in this District.

11.     All conditions precedent to the bringing of any and all causes of action herein have been satisfied, including any notice and opportunity for corrective action requirements. Attached as Exhibit "A" is a true and correct copy of Plaintiff's MMWA notice letter.

## FACTUAL ALLEGATIONS

**False Claims Of Efficacy**

12.     Defendant's marketing and promotion of Meltdown includes numerous false and misleading claims concerning the product's efficacy and mechanism of action.

13.     On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant stop making a number of false and misleading claims about Meltdown.  Despite these demands, Defendant continues to make its false representations.

14.     The NAD specifically demanded that Defendant:

- Stop making the false claim that Meltdown is a "Fat Burner," since the product does not burn fat.

- Stop making the false claims that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%."

- Stop making any claims that compare Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine," since no reliable basis for comparison exists.

- Stop making any claim about the long-term effects of Meltdown, including "before and after" photographic comparisons, since there is no evidence to support any such claims [hereinafter collectively referred to as the "Express Misrepresentations"].

4

15.     Nevertheless, Defendant has continued to make *every single one* of the Express

Misrepresentations on its current packaging and website:



 

16.     On July 18, 2011, the NAD's findings were confirmed by the National Advertising Review Board ("NARB"), the NAD's appellate body.[2]

17.     The website for Meltdown includes claims that it "removes fat like a Blow Torch," that it is "the most profound fat loss innovation of the decade," and that it is the "longest lasting fat burner."  These statements are also false and misleading.

**Meltdown's Ingredients**

18.     In early 2011, after at least one federal law suit alleged that one of Meltdown's ingredients, called "Methyl-Synephrine," was an illegal amphetamine analog, Defendant began to use another ingredient called "Synephrine HCl" in its stead.

19.     This change was only reflected in the ingredient list on the side of the product. Nothing else changed.  The packaging and website continued to make the same dubious claims. In fact, Defendant never edited its website to reflect the new substitution.  As of August 13,

---

[2] The NARB decision also noted that the "warning on the product packaging says that Meldown … should not be used by those who are more than 15 pounds overweight, which is inconsistent with 'before' and 'after' comparisons showing weight loss of more than 15 pounds."

2013, Defendant's website still claimed that the product contained Methyl-Synephrine and touted the Product's superiority on that basis.

20.   Defendant reports the results of at least one study which it conducted on Synephrine on its website:

> 20 milligrams of Synephrine is supposed to be a fairly decent fat loss compound similar … to ephedrine.  So we set up a human subject study and tested all the parameters of fat loss using 1) 25 mgs of pure Synephrine then, 2) 50 mgs of pure Synephrine HCl (hydrochloride) and finally, 3) 200 mgs of pure Synephrin HCl. Even when these high amounts of pure synephrine were stabilized with HCl and bound to a polymer-lipid based delivery system, ***thermogenesis was not induced***.  Furthermore, energy, heart rate and oxygen uptake did not increase ***nor were any other markers of fat loss apparent***![3]

Elsewhere, Defendant touts the superiority of Methyl-Synephrine over Synephrine:

> ***Caution:  Synephrine DOES NOT WORK!***  I hate to burst your bubble but Synephrine and Synephrine HCl are as ***useless as a screen door on a submarine***.[4]

21.   Defendant also began using an ingredient called "Hordenine HCl" instead of another called "Methyl-Hordenine HCl."  Like Synephrine, Defendant had already experimented with Hordenine HCl and found it ineffective, noting: "I was highly disappointed with the lack of MAO inhibiting capacity of Hordenine and Hordenine HCL [sic]."[5]

22.   Defendant switched to the Useless Substance Formulation in or around early 2011, but all of its claims about Meltdown's efficacy remain the same as they did when it contained the Controlled Substance Formulation.  Curiously, despite the fact that Defendant found in its experiments with ingredients in the Useless Substance Formulation that

---

[3]   http://www.vpxsports.com/vpx-news-article/the-euphoria-of-meltdown,  August  13,  2013 (emphasis added).
[4] *Id.* (emphasis added)
[5] *Id.*

"thermogenesis was not induced," it still claims that its product provides a thermogenic increase. Incredibly, the purported increase remains at exactly 29%, the same as before the substitution.

23.     Likewise, Defendant represents that despite switching over to ingredients that were "as useless as a screen door on a submarine," Meltdown is still "university proven" to "burn[] fat for 6+ hours," provide a "56% increase in fat utilization," is "273% more potent than Ephedrine-Caffeine," "972% more potent than Ephedrine," and provide "up to [a] 93% increase in Norepinephrine."   According to Defendant, switching to "useless" ingredients such as Synephrine HCl and Hordenine HCl had no effect on Meltdown's efficacy.

24.     In fact, these ingredient substitutions had no effect on the benefits its product provided:  Defendant's claims about Meltdown's efficacy were false and misleading with regard to its earlier Controlled Substance Formulation, as found by the NAD.  They are likewise false and misleading with regard to its current Useless Substance Formulation.

### FACTUAL ALLEGATIONS CONCERNING THE CLASS REPRESENTATIVE

25.     Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

26.     Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations.

27.     Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

## CLASS REPRESENTATION ALLEGATIONS

28.     Plaintiff seeks to represent a class defined as all persons in the United States who purchased Meltdown (the "Class") and a subclass of all Class members who purchased the Product in New York (the "New York Subclass").  Excluded from the Class and the New York Subclass are persons who made such purchase for the purpose of resale.

29.     Members of the Class and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and New York Subclass number in the hundreds of thousands.   The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined through discovery.   Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third party retailers and vendors.

30.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to whether Defendant's labeling, marketing, and promotion of Meltdown is false and misleading.

31.     The claims of the named Plaintiff are typical of the claims of the Class in that the named Plaintiff was exposed to Defendant's false and misleading marketing and promotional materials, purchased Meltdown, and suffered a loss as a result of that purchase.

32.     Plaintiff is an adequate representative of the Class and New York Subclass because his interests do not conflict with the interests of the Class members he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiff and his counsel.

33.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class and New York Subclass members.  Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>**COUNT I**</u>
**(Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq*.)**

34.     Plaintiff brings this Count I individually and on behalf of the members of the Class and New York Subclass against Defendant.

35.     Meltdown is a consumer product as defined in 15 U.S.C. § 2301(1).

36.     Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

37.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

38.     In connection with the sale of Meltdown, Defendant issued written warranties, as defined in 15 U.S.C. § 2301(6), by making the Express Misrepresentations on its packaging and on its website including:

- that Meltdown is a "Fat Burner," since the product does not burn fat;

- that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%;"

- claims comparing Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine;" and

- claims about the long-term effects of Meltdown, including "before and after" photographic comparisons.

39.     In fact, Meltdown does not conform to the Express Misrepresentations because each of them is false and misleading to reasonable consumers.

40.     On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant cease making the Express Misrepresentations.  On July 18, 2011, the NAD's findings were confirmed by the NARB, the NAD's appellate body.

41.     Moreover, Defendant's own experiments with several of Meltdown's ingredients, including Synephrine HCl and Hodenine HCl revealed them to be ineffective.

42.     Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

43.     Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations which are detailed above.

44.     Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

45.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*, thereby damaging Plaintiff and Class members.

46.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased Meltdown if the true facts had been known.  Meltdown is ineffective and it is worthless.

47.     As a result of Defendant's breach, Plaintiff and the Class have been damaged in the amount of the purchase price of Meltdown.

48.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.     For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.     For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on the Magnuson-Moss Warranty Count;

D.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For injunctive relief as pleaded or as the Court may deem proper; and

G.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## COUNT II
### (Breach Of Express Warranty)

49.     Plaintiff brings this Count II individually and on behalf of the members of the Class and New York Subclass against Defendant.

50.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller of Meltdown issued written warranties by making the Express Misrepresentations on its packaging and on its website including:

- that Meltdown is a "Fat Burner," since the product does not burn fat;

- that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%;"

- claims comparing Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine;" and

- claims about the long-term effects of Meltdown, including "before and after" photographic comparisons.

51.     In fact, Meltdown does not conform to the Express Misrepresentations because each of them is false and misleading to reasonable consumers.

52.     On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant cease making the Express Misrepresentations.  On July 18, 2011, the NAD's findings were confirmed by the NARB, the NAD's appellate body.

53.     Moreover, Defendant's own experiments with several of Meltdown's ingredients, including Synephrine HCl and Hodenine HCl revealed them to be ineffective.

54.     Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

55.     Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations detailed above.

56.     Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

57.     Plaintiff and Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased Meltdown if the true facts concerning Meltdown's safety and efficacy had been known.   Meltdown is ineffective and worthless.

58.     As a result of Defendant's breach, Plaintiff and the Class have been damaged in the amount of the purchase price of Meltdown.

59.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

> A.     For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;
>
> B.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on the Breach of Express Warranty Count;
>
> C.     For compensatory and punitive damages in amounts to be determined by the Court and/or jury;
>
> D.     For prejudgment interest on all amounts awarded;
>
> E.     For injunctive relief as pleaded or as the Court may deem proper; and

14

F.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## COUNT III
### (Unjust Enrichment)

60.     Plaintiff brings this Count III individually and on behalf of the members of the Class and New York Subclass against Defendant.

61.     Plaintiff and Class members conferred benefits on Defendant by purchasing Meltdown.

62.     Defendant has knowledge of such benefits.

63.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiff and Class members' purchases of Meltdown.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that Meltdown was a safe and effective treatment for fat loss when in fact it was ineffective and worthless, which caused injuries to Plaintiff and Class members because they would not have purchased Meltdown if the true facts had been known.

64.     Specifically, Defendant made the following Express Misrepresentations about Meltdown:

- that Meltdown is a "Fat Burner," since the product does not burn fat;

- that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%;"

- claims comparing Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine;" and

15

- claims about the long-term effects of Meltdown, including "before and after" photographic comparisons.

65.     In fact, Meltdown does not conform to the Express Misrepresentations because each of them is false and misleading.

66.     Further, Defendant misrepresented that Meltdown is a safe and effective "fat burner" and an effective treatment for "fat loss" when in fact it was ineffective and worthless.

67.     On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant cease making the Express Misrepresentations.  On July 18, 2011, the NAD's findings were confirmed by the NARB, the NAD's appellate body.

68.     Moreover, Defendant's own experiments with several of Meltdown's ingredients, including Synephrine HCl and Hodenine HCl revealed them to be ineffective.

69.     Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

70.     Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations detailed above.

71.     Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

72.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for their unjust enrichment, as ordered by the Court.

73.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.     For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.     For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on the Unjust Enrichment Count;

C.     For an order of restitution and all other forms of equitable monetary relief;

D.     For prejudgment interest on all amounts awarded;

E.     For injunctive relief as pleaded or as the Court may deem proper; and

F.     For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## <u>COUNT IV</u>
**(Florida Deceptive And Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*)**

74.     Plaintiff brings this Count IV on behalf of the members of the Class and New York Subclass against Defendant.

75.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").   The express purpose of FDUTPA is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202(2).

76.     Plaintiff and Class members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

77.     Defendant was engaged in "trade or commerce" as defined by Fla. Stat. § 501.203(8).

78.     The sale of Meltdown constituted "consumer transactions" within the scope of the Fla. Stat. §§ 501.201 to 501.213.

79.     Fla. Stat. § 501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

80.     Fla. Stat. § 501.204(2) states that "due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to [section] 5(a)(1) of the Federal Trade Commission Act."   Defendant's unfair and deceptive practices are likely to mislead – and have misled – the consumer acting reasonably in the circumstances, and violate Fla. Stat. § 501.204 and 21 U.S.C. § 352.

81.     Defendant has violated the FDUTPA by engaging in the unfair and deceptive practices as described below which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers, by making the Express Misrepresentations, when in fact, they were false and misleading to reasonable consumers, and by engaging in the trade or commerce of "fat burning" supplements using ingredients its own scientists found to be ineffective.

82.     Specifically, Defendant made the following Express Misrepresentations about Meltdown:

•     that Meltdown is a "Fat Burner," since the product does not burn fat;

•     that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%;"

- claims comparing Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine;" and

- claims about the long-term effects of Meltdown, including "before and after" photographic comparisons.

83.    In fact, Meltdown does not conform to the Express Misrepresentations because each of them is false and misleading.

84.    Further, Defendant misrepresented that Meltdown is a safe and effective "fat burner" and an effective treatment for "fat loss" when in fact it was ineffective and worthless.

85.    On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant cease making the Express Misrepresentations.  On July 18, 2011, the NAD's findings were confirmed by the NARB, the NAD's appellate body.

86.    Moreover, Defendant's own experiments with several of Meltdown's ingredients, including Synephrine HCl and Hodenine HCl revealed them to be ineffective.

87.    Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

88.    Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations detailed above.

89.    Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

90.     Plaintiff and the Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid for Meltdown, an ineffective and worthless product, which they would not have purchased had they known the true facts.

91.     The damages suffered by Plaintiff and the Class were directly and proximately caused by the deceptive, misleading, and unfair practices of Defendant.

92.     Pursuant to Fla. Stat. § 501.211(1), Plaintiff and the Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

93.     Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiff and the Class make claims for damages and attorneys' fees and costs.

94.     WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.      For an order certifying the nationwide Class and New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and New York Subclass and Plaintiff's attorneys as Class Counsel to represent the Class and Subclass members;

B.      For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.      For an order finding in favor of Plaintiff, the nationwide Class, and the New York Subclass on the Florida Deceptive And Unfair Trade Practices Count;

D.      For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For injunctive relief as pleaded or as the Court may deem proper; and

G.      For an order awarding Plaintiff and the Class and New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

<u>COUNT V</u>
**(New York Gen. Bus. Law § 349)**

95.     Plaintiff brings this Count V on behalf of himself and the members of the New York Subclass against Defendant.

96.     By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by making the Express Misrepresentations and by engaging in the trade or commerce of "fat burning" supplements using ingredients its own scientists found to be ineffective.

97.     Specifically, Defendant made the following Express Misrepresentations about Meltdown:

- that Meltdown is a "Fat Burner," since the product does not burn fat;

- that Meltdown capsules "Burn Fat for 6+ hours" and "Increase Fat Utilization by 56%;"

- claims comparing Meltdown to ephedrine and epinephrine, including that it is "273% more potent than ephedrine-caffeine" and "972% more powerful than epinephrine;" and

- claims about the long-term effects of Meltdown, including "before and after" photographic comparisons.

98.     In fact, Meltdown does not conform to the Express Misrepresentations because each of them is false and misleading to reasonable consumers.

99.     Further, Defendant misrepresented that Meltdown is a safe and effective "fat burner" and an effective treatment for "fat loss" when in fact it was ineffective and worthless.

100.     On October 28, 2010, the NAD took the extraordinary step of demanding that Defendant cease making the Express Misrepresentations.  On July 18, 2011, the NAD's findings were confirmed by the NARB, the NAD's appellate body.

101.     Moreover, Defendant's own experiments with several of Meltdown's ingredients, including Synephrine HCl and Hodenine HCl revealed them to be ineffective.

102.     Plaintiff Adam Karhu purchased one bottle of Meltdown capsules for $35.97 on or about January 16, 2013, from www.bodybuilding.com.

103.     Mr. Karhu read the label from the Meltdown packaging as it appeared on www.bodybuilding.com, and purchased Meltdown in reliance on the claims that it was a safe and effective "fat burner" and the other Express Misrepresentations detailed above.

104.     Mr. Karhu relied on the Express Misrepresentations in deciding to purchase Meltdown, and the Express Misrepresentations were part of the basis of the bargain, in that he would not have purchased Meltdown if he had known that the Express Misrepresentations were false.

105.     The foregoing deceptive acts and practices were directed at consumers.

106.     The foregoing deceptive acts and practices were misleading in a material way because they fundamentally misrepresented the safety and efficacy of Meltdown to induce consumers to purchase those products.

107.     Plaintiff and members of the New York Subclass were injured as a result because they paid for Meltdown, an ineffective and worthless product, which they would not have purchased had they known the true facts.

108.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

109.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

A.    For an order certifying a New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the New York Subclass and Plaintiff's attorneys as Class Counsel to represent the New York Subclass members;

B.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

C.    For an order finding in favor of Plaintiff and the New York Subclass on the New York Gen. Bus. Law § 349 Count;

D.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.    For injunctive relief as pleaded or as the Court may deem proper; and

G.    For an order awarding Plaintiff and the New York Subclass their reasonable attorneys' fees and expenses and costs of suit.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: August 19, 2013                  Respectfully submitted,

                                        s/Barry L. Davis
                                        Barry L. Davis  (State Bar No. 294977)
                                        Attorney E-Mail:  davis@tdflaw.com
                                        Thornton, Davis & Fein, P.A.
                                        80 SW Eighth Street, Suite 2900
                                        Miami, Florida 33130
                                        Telephone: (305) 446-2646
                                        Facsimile:  (305) 441-2374

                                        Scott A. Bursor (State Bar No. 68362)
                                        Attorney E-Mail:  Email:  scott@bursor.com
                                        **BURSOR & FISHER, P.A.**
                                        888 Seventh Avenue
                                        New York, NY 10019
                                        Telephone: (212) 989-9113

                                        *Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 19, 2013 a true and correct copy of the foregoing

was served electronically via the ECF system upon all counsel per the Service List below.

                                        By:     s/Barry L. Davis
                                                Barry. L. Davis

## SERVICE LIST

Victoria N. Godwin, Esq.
E-mail:  vickeyg@vpxsports.com
**VITAL PHARMACEUTICALS, INC.**
1600 North Park Drive
Weston, Florida 33326
Telephone: (954) 641-0570
Facsimile: (954) 389-6254
*Attorneys for Defendant*
*Vital Pharmaceuticals, Inc.*

24