UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 13-60768-CIV-COHN/SELTZER

ADAM KARHU, on behalf of himself and all
others similarly situated,

     Plaintiff,

v.

VITAL PHARMACEUTICALS, INC., d/b/a VPX
SPORTS,

     Defendant.

_____/

## ORDER DENYING CLASS CERTIFICATION

**THIS CAUSE** is before the Court upon Plaintiff's Motion for Class Certification

[DE 70] ("Motion").  The Court has considered the Motion, Defendant's Response

[DE 89], and Plaintiff's Reply [DE 93], and is otherwise advised in the premises.  For the

reasons discussed herein, the Court will deny the Motion.[1]

## I.  BACKGROUND

Defendant Vital Pharmaceuticals, Inc., ("VPX") is a Florida corporation that

manufactures and markets a dietary supplement called VPX Meltdown Fat Incinerator

("Meltdown").  DE 114 ¶¶ 1, 7.  VPX advertises that consumers can use Meltdown to

"burn fat" and achieve rapid fat loss.  Id. ¶ 1.  Plaintiff Adam Karhu, a New York resident

---

[1] The parties have also filed dueling motions to strike expert declarations submitted in connection with the class certification issue.  See DE 88 (Defendant's Evidentiary Objections and Motion to Strike Declaration of Colin V. Weir Filed in Support of Plaintiff's Motion for Class Certification); DE 104 (Plaintiff's Motion to Strike the Declaration of Dr. Laila Haider in Support of Defendant's Response in Opposition to Plaintiff's Motion for Class Certification).  Because the expert materials subject to the motions to strike do not impact the Court's conclusions with regard to the propriety of class certification, the Court will deny the motions to strike as moot.

who purchased Meltdown, claims that the product is ineffective for its advertised purpose.  Id. ¶¶ 1, 5–6.  On April 3, 2013, Karhu filed this lawsuit to recover damages based upon VPX's alleged false advertisements, and to enjoin any further misrepresentations.  See generally DE 1.

Karhu has styled his suit as a class action.  He purports to bring the suit on behalf of all persons in the United States who have purchased Meltdown for purposes other than resale since April 4, 2008 (the "Nationwide Class").  DE 70 at 2; DE 114 ¶ 28. Karhu also proposes a subclass comprising all members of the Nationwide Class who purchased Meltdown in New York (the "New York Subclass," collectively the "Proposed Classes").  DE 114 ¶ 28.  Karhu asserts the following claims seeking monetary and injunctive relief on behalf of the Nationwide Class: (1) breach of express warranty under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, et seq.; (2) breach of express warranty; (3) unjust enrichment; and (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, et seq.  DE 114 ¶¶ 34–94. Karhu also brings a claim solely on behalf of the New York Subclass for violations of New York General Business Law § 349.  DE 114 ¶¶ 95–109.  In his Motion, Karhu now asks the Court to certify the Proposed Classes under Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

## II.  **LEGAL STANDARD**

Rule 23 of the Federal Rules of Civil Procedure governs class actions and provides in pertinent part:

(a) **Prerequisites.**  One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
(1) the class is so numerous that joinder of all members is impracticable;
(2) there are questions of law or fact common to the class;
(3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class; and
(4) the representative parties will fairly and adequately protect the
interests of the class.

(b) **Types of Class Actions.**   A class action may be maintained if
Rule 23(a) is satisfied and if:

. . .

(2) the party opposing the class has acted or refused to act on grounds
that apply generally to the class, so that final injunctive relief or
corresponding declaratory relief is appropriate respecting the class as a
whole; or

(3) the court finds that the questions of law or fact common to class
members predominate over any questions affecting only individual
members, and that a class action is superior to other available methods
for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23.  An action may be maintained as a class action only if all four

prerequisites of Rule 23(a) are satisfied and the requirements of one of the subsections

of Rule 23(b) are met.  Heaven v. Trust Co. Bank, 118 F.3d 735, 737 (11th Cir. 1997).

A plaintiff seeking certification of a class also "must establish that the proposed class is

'adequately defined and clearly ascertainable.'"  Little v. T-Mobile USA, Inc., 691 F.3d

1302, 1304 (11th Cir. 2012).

In deciding whether to certify a class, a district court has broad discretion.

Washington v. Brown & Williamson Tobacco Corp., 959 F.2d 1566, 1569 (11th Cir.

1992).  Although a district court shall not determine the merits of a case at the

certification stage, sometimes it "may be necessary for the court to probe behind the

pleadings before coming to rest on the certification question." Id. at 1570 n.11 (quoting

Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)).  A court should certify a class only if

the court is satisfied, after rigorous analysis, that the prerequisites of Rule 23 have been

met.  Gilchrist v. Bolger, 733 F.2d 1551, 1555 (11th Cir. 1984).  "The burden of

establishing these requirements is on the plaintiff who seeks to certify the suit as a class action."  <u>Heaven</u>, 118 F.3d at 737.

## III.  <u>DISCUSSION</u>

The Court declines to certify Karhu's Proposed Classes because of the administrative difficulties they present.  Karhu states that "this case is ideally suited for class treatment" (DE 93 at 10) because it arises from a uniform pattern of false advertising by VPX that caused similar harms to Meltdown purchasers across the country.  Close examination of the classes and claims, however, shows that the case would be unmanageable as a class action.  First, the Court lacks a practical method of verifying membership in the Proposed Classes of Meltdown purchasers.  No central record of Meltdown customers exists, and it is unlikely that each Meltdown purchaser since 2008 has retained a proof of purchase.  Second, the claims of the Nationwide Class implicate the laws of multiple states.  The varied requirements of the states' laws would require different proof on each claim depending on the locations of the class members.  These legal permutations would render an eventual trial unwieldy, and would overshadow the common factual questions that otherwise unite the class members' claims.  As illustrated by the following step-by-step discussion of the class certification analysis, class treatment of this action is therefore inappropriate.

### A.  <u>Karhu Has Adequately Defined His Proposed Classes</u>

A plaintiff seeking class certification must first craft a class definition clear enough to allow the Court to understand whether a particular individual is a member of the class.  <u>Little</u>, 691 F.3d at 1304; <u>Pottinger v. City of Miami</u>, 720 F. Supp. 955, 957–58 (S.D. Fla. 1989).  Karhu's Nationwide Class includes all persons in the United States who have purchased Meltdown for purposes other than resale since April 4, 2008.

DE 70 at 2.  The New York Subclass includes those members of the Nationwide Class who purchased Meltdown in New York.  Id.  The proposed class definitions clearly and simply encompass each individual who purchased Meltdown within a stated timeframe, and on whose behalf Karhu attempts to bring suit.  Karhu has therefore sufficiently defined his proposed classes.  See Pottinger, 720 F. Supp. at 957–58.

### B. The Proposed Classes Are Not Ascertainable

Having adequately defined the Proposed Classes, Karhu must demonstrate that they are ascertainable.  Little, 691 F.3d at 1304.  A class is ascertainable if the Court can determine whether a given person is a class member through administratively feasible methods.  See In re Checking Account Overdraft Litig., 286 F.R.D. 645, 650–51 & n.7 (S.D. Fla. 2012).  Because Karhu has failed to propose a realistic method of identifying the individuals who purchased Meltdown, he has failed to show that the Proposed Classes are sufficiently ascertainable.

Karhu suggests that VPX's sales data would allow the Court to identify members of the Proposed Classes.  DE 93 at 4.  VPX, however, makes the bulk of its sales to distributors and retailers, and sells directly to consumers relatively infrequently.  DE 89 at 5.  Accordingly, VPX does not have a record of the identities of most members of the Proposed Classes.  DE 89-1 ¶ 7.

Further, a bottle of Meltdown is a relatively small purchase compared with, for example, a car or a major appliance.  Because purchasers are less likely to retain receipts or other records of minor purchases, courts have been reluctant to rely on those proofs to ascertain the identities of class members.  See Red v. Kraft Foods, Inc., No. 10-1028, 2012 U.S. Dist. LEXIS 186948, at *14–19 (C.D. Cal. Apr. 12, 2012) (suggesting that court cannot ascertain consumer class using receipts of small

purchases); True v. ConAgra Foods, Inc., No. 07-00770, 2011 U.S. Dist. LEXIS 6770, at *15–17 (W.D. Mo. Jan. 4, 2011) (denying class certification where there was no customer "master list" and it was unlikely that consumers had retained receipts of minor purchases). Here, most Meltdown purchasers since April 4, 2008, probably have not retained their receipts or other proofs of purchase. Accordingly, the Court doubts that it could glean the identities of most class members from existing documentary evidence.

Nor will the Court trust individuals to identify themselves as class members through the submission of affidavits. Accepting affidavits of Meltdown purchases without verification would deprive VPX of its due process rights to challenge the claims of each putative class member. See McLaughlin v. Am. Tobacco Co., 522 F.3d 215, 232 (2d Cir.), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008). On the other hand, allowing VPX to contest each affidavit would require a series of mini-trials and defeat the purpose of class-action treatment. Using affidavits to determine class membership would also invite fraudulent submissions and could dilute the recovery of genuine class members. See Carrera v. Bayer Corp., 727 F.3d 300, 305–09 (3d Cir. 2013) (rejecting affidavits as proof of class membership in consumer class action based upon potential for fraudulent submissions).

In short, Karhu has not suggested any practical means of verifying class membership through existing evidence, and the Court will not allow individuals to identify themselves as class members solely upon a sworn statement. Karhu has therefore failed to demonstrate that the Proposed Classes are ascertainable. This issue alone justifies denial of the Motion, however the Court will continue through the remaining class certification factors in the interests of clarity and thoroughness.

**C.** __Karhu Has Satisfied the Requirements of Rule 23(a)__

A plaintiff seeking class certification must demonstrate that the class satisfies the four prerequisites of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.  The parties have stipulated that the numerosity requirement is satisfied.  DE 70 at 10; DE 89 at 7.  The Court concludes that Karhu has also satisfied the remaining three factors of Rule 23(a).

**i.** __Karhu Has Satisfied the Commonality Requirement__

The commonality requirement of Rule 23(a)(2) demands "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  It is a "relatively light burden" that "does not require that all the questions of law and fact raised by the dispute be common . . . or that the common questions of law or fact predominate over individual issues."  <u>Vega v. T-Mobile USA, Inc.</u>, 564 F.3d 1256, 1268 (11th Cir. 2009) (internal quotation marks omitted).  Rather, it requires only "that there be at least one issue whose resolution will affect all or a significant number of the putative class members."  <u>Williams v. Mohawk Indus., Inc.</u>, 568 F.3d 1350, 1355 (11th Cir. 2009) (internal quotation marks omitted).

Karhu's claims each rest upon the fundamental premise of his Complaint: that Meltdown is ineffective for its advertised purpose of causing fat loss.  <u>See, e.g.</u>, DE 114 ¶ 1.  His claims and those of the Proposed Classes share many common factual questions, such as the nature and extent of VPX's advertisement of Meltdown as a "fat burner" and whether Meltdown is effective for that purpose.  Karhu therefore has shown questions of fact common to the Proposed Classes, satisfying the commonality requirement of Rule 23(a)(2).

VPX argues that Karhu nevertheless cannot establish commonality because he has "failed to prove predominance of common class claims" and because "each claim asserted by [Karhu] would require in depth inquiry of all class members . . . defeating the purpose of class actions."  DE 89 at 8–9.  Even taking VPX's assertions as true, they do not speak to commonality, which does not require that common issues predominate.  Instead, Karhu need only show that one common issue exists, which he has done.  See Williams, 568 F.3d at 1355.

### i.  Karhu's Claims Are Typical of the Class's Claims

Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  A named plaintiff's claims are "typical" of the class's claims when the claims each arise from the same "event or pattern or practice and are based on the same legal theory."  Kornberg v. Carnival Cruise Lines, Inc., 741 F.2d 1332, 1337 (11th Cir. 1984).  The permissive typicality standard does not require the claims of the representative and class members to be identical; instead, the representative's claims need only be "reasonably co-extensive with those of the absent class members."  In re Checking Account Overdraft Litig., 281 F.R.D. 667, 675 (S.D. Fla. 2012).

Karhu premises his claims upon VPX's practice of marketing Meltdown as a "fat burner."  Karhu contends that Meltdown does not burn fat or otherwise contribute to fat loss.  Karhu therefore alleges that he suffered harm when he paid for the ineffective Meltdown.  This simple allegation of the purchase of a product ineffective for its primary purpose is uniform across Karhu's claims and the claims of the Proposed Classes, and forms the basis for their shared theories of recovery against VPX.  The Court therefore finds the element of typicality satisfied.

VPX argues that Karhu's claims are nevertheless atypical of the Proposed Classes' claims because the amount paid for Meltdown and the quantity of capsules purchased varies from class member to class member.  DE 89 at 10.  Accordingly, each class member suffered a different amount of harm.  The typicality requirement, however, pertains to the factual and legal theories underlying a party's claims, and not the quantity of harm suffered.  "Differences in the amount of damages between the class representative and other class members does not affect typicality."  Kornberg, 741 F.2d at 1337.

VPX also suggests that Karhu's claims are not typical because he cannot state with certainty whether he lost body fat while consuming Meltdown or whether he used Meltdown as directed.  DE 89 at 9.  Karhu, however, does not premise his claims upon his personal experience using Meltdown.  Instead, Karhu alleges that he and members of the Proposed Classes suffered harm at the time of purchase, when they paid money for a useless product because of VPX's false advertisements.  See, e.g., DE 114 ¶¶ 43–46, 55–57, 63.  The details of Karhu's post-purchase use of Meltdown do not impact whether his claims for point-of-purchase injury are reasonably co-extensive with those of other class members.

Finally, VPX argues that Karhu's claims are not typical because he "had no opinion about the efficacy of Meltdown prior to speaking with counsel."  DE 89 at 9.  Whether Karhu knew about Meltdown's inefficacy before conversations with counsel, however, does not impact the merits of his claim that he overpaid for Meltdown based on VPX's allegedly false advertisements.  VPX has failed to rebut Karhu's showing that

his claims and the claims of the Proposed Classes share theories of recovery based

upon the same factual pattern, and that the typicality requirement is satisfied.

### i. Karhu and His Attorneys Will Adequately Represent the Proposed Classes

Under Rule 23(a)(4), the Court must be satisfied that the "representative parties

will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).

This requirement applies to both the named plaintiff and his counsel.  London v.

Wal-Mart Stores, Inc., 340 F.3d 1246, 1253 (11th Cir. 2003).  The purpose of the

adequacy requirement is to protect the legal rights of the unnamed class members.

Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 726 (11th Cir. 1987).  "This 'adequacy

of representation' analysis encompasses two separate inquiries: (1) whether any

substantial conflicts of interest exist between the representatives and the class; and

(2) whether the representatives will adequately prosecute the action."  Valley Drug Co.

v. Geneva Pharms., Inc., 350 F.3d 1181, 1189 (11th Cir. 2003).

The Court finds that both Karhu and his attorneys will adequately protect the

interests of the class.  Karhu's claims and interests in recovering amounts paid for an

ineffective product are aligned with those of the class members.  Moreover, Karhu has

shown himself willing to participate vigorously in the pursuit of the Proposed Classes'

claims throughout this litigation.  See DE 70 at 12.  Karhu's counsel, on the other

hand—lawyers from the firms of Bursor & Fisher, P.A., and Thornton, Davis & Fein,

P.A.—are experienced class-action attorneys capable of giving this lawsuit the attention

and expertise it warrants.  See DE 70 at 12–13.

VPX nevertheless contests the adequacy of both Karhu and his counsel.  VPX

argues that Karhu cannot adequately represent the class because he initially mistook

the date and source of his Meltdown purchase, did not form a belief that Meltdown was ineffective until he spoke with his attorneys, and paid a different amount for his Meltdown purchase than other class members may have paid.  DE 89 at 10–11.  As discussed in relation to Karhu's typicality, however, none of these issues appreciably impact the merits of Karhu's claims or his interest in obtaining a recovery for himself and other class members.

VPX also questions Karhu's motives, noting that Karhu never sought medical attention for the feelings of malaise he allegedly suffered while consuming Meltdown, and that he never complained of the product to VPX, instead taking his grievances directly to his attorneys.  Id. at 11.  These innuendos do not disturb the Court's conclusion that no substantial conflicts exist between Karhu's interests and those of the class, and that Karhu has and will continue to adequately prosecute this action.

With regard to Karhu's attorneys, VPX argues that they have conducted themselves unprofessionally, exhibit unfamiliarity with the Federal Rules of Civil Procedure and the Court's local rules, and exercised insufficient diligence when accepting Karhu as a client.  DE 89 at 11–12.  The Court recognizes that relations among counsel and the parties in this action have been less than civil at times.  Neither side is entirely without blame, however, and the Court does not consider the contentious nature of this dispute to be of such a magnitude as to render Karhu's attorneys inadequate as class counsel.  To the extent the Court ultimately determines that attorneys for any party have participated in misconduct, it will address those issues through appropriate sanctions.  Moreover, the Court flatly rejects VPX's contention that Karhu's counsel lack relevant expertise.  Their firms, Bursor & Fisher, P.A., and

Thornton, Davis & Fein, P.A., have ample experience litigating class actions and have achieved substantial successes for their clients.

**D.  Predominance Under Rule 23(b)(3)**

In addition to satisfying the prerequisites of Rule 23(a), Karhu must establish that his class action fits within one of the categories of allowable actions under Rule 23(b). Karhu has chosen to proceed primarily under Rule 23(b)(3), which provides for class actions where common questions of law or fact predominate over the class members' individual issues and a class action is the superior method of managing the claims. Because the Court's predominance analysis differs with respect to each of the claims, the Court will determine whether Karhu has shown that common issues predominate on a claim-by-claim basis.

**i.   Common Issues Do Not Predominate on the MMWA Claim**

A MMWA express written warranty claim draws its substantive elements from the applicable state warranty law.  The applicable state warranty law in this action is the law of the state where each class member purchased Meltdown.  Because warranty law differs from state to state, the legal issues peculiar to each state's members of the Nationwide Class will likely predominate over common legal and factual questions, rendering Rule 23(b)(3) certification of the MMWA claim inappropriate.

Karhu's MMWA claim alleges the breach of an express written warranty.  DE 114 ¶¶ 38–48.  The MMWA explicitly draws its elements from state law with respect to claims for breach of implied warranty.  15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law . . . .").  The MMWA is not so clear with regard to express warranties, however, causing some confusion as to whether the MMWA also adopts state-law elements of claims for breach of express warranty.  Hill v.

Hoover Co., 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012).  The legislative history of the MMWA suggests that, while the drafters of the statute intended to exclude express *oral* warranties from its coverage, they did not intend to displace state-law requirements for claims pertaining to express written warranties. Walsh v. Ford Motor Co., 807 F.2d 1000, 1015–16 (D.C. Cir. 1986).  Upon review of the relevant authorities, the Court therefore agrees with the conclusion of the Hon. Stephan P. Mickle of the Northern District of Florida that the MMWA does not define a stand-alone federal cause of action for breach of express written warranty, but instead "borrow[s] state law causes of action for breach of both written and implied warranties." Hill, 899 F. Supp. 2d at 1266; accord Walsh, 807 F.2d at 1012 ("We hold . . . [that the MMWA] calls for the application of state written and implied warranty law, not the creation of additional federal law.").

Because the MMWA express written warranty claim takes its requirements from the applicable state warranty law, the Court must determine which state's warranty law applies to the claims of the Proposed Classes. See Walsh, 807 F.2d at 1012.  In making choice-of-law determinations, the Court will apply the rules of the state in which it sits: Florida. See David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009).  Under Florida's choice-of-law analysis, warranty claims are contractual in nature. S. Broad. Grp., LLC v. Gem Broad., Inc., 145 F. Supp. 2d 1316, 1324 (M.D. Fla. 2001), aff'd, 49 F. App'x 288 (11th Cir. 2002).  Florida applies the rule of *lex loci contractus* to contract claims, thus the law of the forum in which the parties executed their contract will apply. State Farm Mut. Auto. Ins. Co. v. Roach, 945 So. 2d 1160, 1163 (Fla. 2006).  In the case of a consumer product, the place of contracting is generally where the consumer purchased the product. See David, 629 F. Supp. 2d

at 1316.  Therefore, the law governing each class member's warranty claim is the law of the state where he purchased the Meltdown.

As the party seeking certification of a nationwide class with claims implicating the laws of multiple states, Karhu bears the burden of convincing the Court that common issues predominate over the different questions posed by each state's law.  See Klay v. Humana, Inc., 382 F.3d 1241, 1262 (11th Cir. 2004), abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639 (2008); Cohen v. Implant Innovations, Inc., 259 F.R.D. 617, 625 (S.D. Fla. 2008).  Karhu does not address the impact of the many potentially applicable state laws in any real depth.  Karhu attempts to sidestep the issue in his Reply by shifting the burden to VPX, noting that VPX has not identified material differences between Florida's warranty law and the laws of other states.  DE 93 at 8.  However, it is the plaintiff—Karhu—who must convince the Court that common issues predominate.  See Klay, 382 F.3d at 1262.

Karhu's Reply does cite to a handful of cases to suggest that the elements of a warranty claim do not differ from state to state.  DE 93 at 8.  None of the collected authorities, however, state unequivocally that the requirements for a cause of action premised upon a breach of express warranty are identical across the fifty states.  To the contrary, "the laws of the various states differ . . . [, for example,] in whether they require proof of . . . privity to make successful claims for breach [of express warranty]."  Alligood v. Taurus Int'l Mfg., Inc., No. 06-3, 2009 U.S. Dist. LEXIS 131371, at *12, *25–27 (S.D. Ga. Mar. 4, 2009) (declining to certify nationwide class asserting Magnuson-Moss express warranty claim).  As the Court has held with regard to Karhu's erstwhile claim for breach of implied warranty, Karhu and other consumers who purchased Meltdown

14

via intermediate retailers are not in privity with VPX.  DE 34 at 12–14.  Whether a lack of privity defeats each class member's claim thus poses an individualized inquiry based upon the class member's location.

Similarly, some states require each plaintiff asserting a warranty claim to demonstrate that he actually relied on the representation at issue.  Cole v. Gen. Motors Corp., 484 F.3d 717, 726 (5th Cir. 2007) (collecting cases).  Proving a class member's actual reliance upon VPX's representations would require individualized proof that the class member saw VPX's advertisements that Meltdown burns fat and bought Meltdown as a result.  See id. at 726–27 (reversing grant of class certification because proving actual reliance required individual inquiries).  The potential need to prove actual reliance therefore threatens individualized factual inquiries depending upon each class member's location.

In short, varied state laws would govern the MMWA claims of class members across the country, imposing different legal requirements and overshadowing the common factual bases of the claims.  Moreover, some of these laws would require individualized proof inappropriate for class treatment, such as proof of actual reliance upon VPX's advertisements.  In light of the differences among applicable laws and the potential need for individualized proof, the Court finds that individualized legal and factual issues predominate over the common aspects of the Proposed Classes' MMWA claims, rendering class certification inappropriate under Rule 23(b)(3).  See Alligood, 2009 U.S. Dist. LEXIS 131371, at *13–16.

### ii.   Common Issues Do Not Predominate on the Express Warranty Claim

Because the applicable state warranty law governs the merits of a MMWA express written warranty claim, the predominance analysis for state-law express written

warranty claims and MMWA express written warranty claims is functionally identical.

See Walsh, 807 F.2d at 1016–17.  The Court's conclusion that individualized issues

predominate over common ones in relation to the MMWA claims therefore applies with

equal force to the Proposed Classes' state-law claims for breach of an express written

warranty.  See DE 114 ¶¶ 50–57.

### iii.   Common Issues Do Not Predominate on the Unjust Enrichment Claim

Karhu assumes with minimal discussion that Florida's law on unjust enrichment

applies to the claims in this nationwide class action.  See DE 70 at 17–18.  Unjust

enrichment claims are quasi-contractual, however, and Florida's courts apply the same

*lex loci contractus* analysis to contract and quasi-contract claims.  David, 629

F. Supp. 2d at 1316–17.  Therefore, the applicable law for each class member's unjust

enrichment claim is the law of the state where he purchased Meltdown.  See

supra p. 13.

Some courts have found variation in unjust enrichment laws to preclude a finding

of predominance for multistate classes asserting unjust enrichment claims.  See Clay v.

Am. Tobacco Co., 188 F.R.D. 483, 500–01 (S.D. Ill. 1999) (cataloguing differences in

state unjust enrichment laws and denying class certification).  Karhu points out that

other courts have noted that there are "minimal actual differences between the unjust

enrichment laws in each of the 50 states."  DE 93 at 8 (quoting AFSCME v. Cephalon,

Inc. (In re Actiq Sales & Mktg. Practices Litig.), 790 F. Supp. 2d 313, 322 (E.D. Pa.

2011)).  Beyond conclusory assertions that variations in the elements of unjust

enrichment claims throughout the United States are immaterial, however, Karhu offers

no persuasive analysis of the potentially applicable unjust enrichment laws, or why the

Court should overlook differences among those laws to find that common questions predominate.  The Court thus concludes that Karhu has failed to satisfy his burden of establishing that common issues predominate with regard to the unjust enrichment claims of the Proposed Classes.  See Klay, 382 F.3d at 1262.

### iv.    Common Issues Do Not Predominate on the Unfair Trade Practices Claim

Karhu asserts that FDUTPA governs the unfair trade practices claims of members of the Proposed Classes throughout the country because the Court, in a prior Order granting VPX's motion to dismiss the First Amended Complaint, recognized that "FDUTPA applies 'to claims of out-of-state consumers if the offending conduct occurred predominantly or exclusively in Florida.'"  DE 93 at 8 (quoting DE 34 at 17).  However, the Court's prior determination related to whether out-of-state consumers could ever invoke FDUTPA's protections, and did not squarely address choice-of-law issues.  See DE 34 at 17–18.  The Court now turns to choice-of-law on the unfair trade practices claims for the first time, and finds that the laws of each class member's home state govern.  Karhu has failed to show that common issues predominate in light of the varied applicable laws, thus class certification is inappropriate.

Florida applies a "most significant relationship" test to determine which state's laws apply to tort claims, including claims under unfair trade practices regimes such as FDUTPA.  Cohen, 259 F.R.D. at 634.  This test requires the Court to examine: (1) the place where the injury occurred; (2) the place where the harmful conduct occurred; (3) the domicil, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place (if any) where the parties' relationship is centered.  Id. at 635 (citing Restatement (Second) of Conflict of Laws § 145 (1971)).  Here, the

alleged injury occurred where each class member purchased Meltdown.  The harmful

conduct—the allegedly false advertising—occurred both in Florida, where VPX has its

principal place of business and presumably generated its advertisements, and at the

point of purchase, where VPX's representations were displayed on Meltdown

packaging.  The class members are domiciled throughout the country, whereas VPX is

a Florida corporation with its principal place of business in Florida.  Finally, given that

most class members purchased Meltdown from intermediaries throughout the country,

there is no particular location where the parties' relationships are centered.  Taking all of

these factors together, the Court concludes that the state with the most significant

relationship to each class member's claim is the state where the individual purchased

Meltdown.  This conclusion is buttressed by the interest each state has in enforcing its

unfair trade practices laws for the well-being of its own consumers.  See Wilks v. Ford

Motor Co. (In re Ford Motor Co. Ignition Switch Prods. Liab. Litig.), 174 F.R.D. 332, 348

(D.N.J. 1997) ("Each plaintiff's home state has an interest in protecting its consumers

from in-state injuries caused by foreign corporations . . . ."); accord Hutson v. Rexall

Sundown, Inc., 837 So. 2d 1090, 1094 (Fla. 4th DCA 2003) (finding unfair trade

practices laws of consumers' home states governed in purported nationwide FDUTPA

class action).  Given the significant variation in unfair trade practices statutes throughout

the country, and the lack of a showing by Karhu to the contrary, the Court finds that

Karhu has failed to establish that common issues predominate with respect to the unfair

trade practices claims.

     **v.**    **Common Issues Predominate on the N.Y. Gen. Bus. Law § 349 Claim**

     As discussed with regard to the FDUTPA claim, the unfair trade practices laws of

the state where each class member purchased Meltdown govern the class member's

unfair trade practices claim.  Accordingly, New York's unfair trade practices statute—

General Business Law § 349—applies to the claims of the New York Subclass.  A

plaintiff claiming a violation of section 349 must show "that a defendant has engaged in

(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff

suffered injury as a result of the allegedly deceptive act or practice."  City of N.Y. v.

Smokes-Spirits.com, Inc., 911 N.E.2d 834, 838 (N.Y. 2009).  Here, VPX marketed

Meltdown to consumers by representing that product would burn fat and cause fat loss.

Whether VPX's representations are ultimately true is an issue common to the claims of

each class member.  Whether each class member was harmed by paying money for an

ineffective product is also susceptible to common proof.  The Court thus finds that

common issues predominate with respect to the section 349 claim of the New York

Subclass.  Accord Seekamp v. It's Huge, Inc., No. 09-00018, 2012 U.S. Dist. LEXIS

33295, at *30–33 (N.D.N.Y. Mar. 13, 2012) (finding common questions to predominate

on consumer claims of misrepresentative advertising under N.Y. Gen. Bus. Law § 349).

### E.  A Class Action Is Not Superior Under Rule 23(b)(3)

Having determined that common issues predominate only with regard to the

section 349 claims of the New York Subclass, the Court now turns to the second prong

of the Rule 23(b)(3) test: whether "a class action is superior to other available methods

for fairly and efficiently adjudicating" the claims.  The predominance and superiority

analyses are intertwined, because where there are "predominant issues of law or fact,

resolution in one proceeding efficiently resolves those issues with regard to all claimants

in the class."  Jackson v. Motel 6 Multipurpose, Inc., 130 F.3d 999, 1006 n.12 (11th Cir.

1997).  The Court may also consider:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

The kaleidoscope of issues presented by the claims of the Nationwide Class under the many applicable state laws would produce an unmanageable parade of mini-trials. Maintenance of the suit as a multistate class action is therefore impractical. Of course, the Court need not accept Karhu's proposed class definitions, and may define narrower classes or break them up into subclasses to facilitate the management of the case. Fed. R. Civ. P. 23(c)(4), (5); Grillasca v. Hess Corp., No. 05-1736, 2007 U.S. Dist. LEXIS 53356, at *10 (M.D. Fla. July 24, 2007). The Court could theoretically certify Karhu's proposed New York Subclass to allow pursuit of the section 349 claim, and perhaps also the MMWA, express warranty, and unjust enrichment claims as limited to New York consumers. This solution would reduce the problems raised by applying the laws of multiple states. Karhu, however, has brought this action first and foremost as a nationwide class action, and the Court declines to drastically redefine the action *sua sponte* as one only on behalf of New York consumers. Moreover, even a narrower class definition would not address the Court's concern that there is no administratively feasible way of ascertaining the identity of individual class members. See supra pp. 5–6. In light of these practical difficulties, the Court concludes that the maintenance of a class action—either on behalf of the Nationwide Class or the New

York Subclass—is not the superior method of adjudicating this controversy.  The Court

will accordingly deny class certification under Rule 23(b)(3).

### F.  Karhu Has Not Presented a Proper Rule 23(b)(2)
###     Action for Declaratory or Injunctive Relief

Karhu also seeks class certification pursuant to Rule 23(b)(2).  Rule 23(b)(2)

allows for certification of a class seeking declaratory or injunctive relief that would be

generally applicable to the class as a whole.  "A declaratory or injunctive relief class

pursuant to Rule 23(b)(2) is appropriate only if 'the predominant relief sought is

injunctive or declaratory.'"  DWFII Corp. v. State Farm Mut. Auto. Ins. Co., 469 F. App'x

762, 765 (11th Cir. 2012) (per curiam).  Accordingly, when a plaintiff seeks both

monetary and injunctive or declaratory relief, a Rule 23(b)(2) class is only appropriate if

the monetary relief is merely incidental to the other relief.  Id.  Monetary relief is

"incidental" when the primary aim of a suit is to obtain a generally applicable group

remedy.  Murray v. Auslander, 244 F.3d 807, 812 (11th Cir. 2001).  Group remedies

tend to be those pursued by a cohesive class sharing a relevant preexisting legal

relationship or common trait, such as race or gender.  Stalley v. ADS Alliance Data

Sys., Inc., No. 11-1652, 2013 U.S. Dist. LEXIS 167156, at *31–35 (M.D. Fla. Nov. 25,

2013), reconsideration denied, 2013 U.S. Dist. LEXIS 175929 (M.D. Fla. Dec. 16,

2013).  By way of contrast, the Proposed Classes share no significant preexisting

relationships beyond the purchases that form the basis for this suit.  Further, the

injunctive relief Karhu requests takes a back seat to the apparent principal aim of the

lawsuit: to recover damages based upon the amount each individual class member paid

for an ineffective product.  Because the Proposed Classes "lack the class cohesiveness

that distinguishes (b)(2) from (b)(3) actions," <u>Hammett v. Am. Bankers Ins. Co.</u>, 203

F.R.D. 690, 696 (S.D. Fla. 2001), the Court will deny certification under Rule 23(b)(2).

**IV.   <u>CONCLUSION</u>**

      In sum, the Court declines to grant class certification of this action.  Karhu has

satisfied the requirements of Rule 23(a) with regard to the Proposed Classes, however

he has failed to establish that common issues predominate and that a class action is the

superior means of resolving this controversy under Rule 23(b)(3), or that certification of

a Rule 23(b)(2) class is appropriate.  It is accordingly

      **ORDERED AND ADJUDGED** that Plaintiff's Motion for Class Certification

[DE 70] is **DENIED**.  It is further

      **ORDERED AND ADJUDGED** that Defendant's Evidentiary Objections and

Motion to Strike Declaration of Colin V. Weir Filed in Support of Plaintiff's Motion for

Class Certification [DE 88] and Plaintiff's Motion to Strike the Declaration of Dr. Laila

Haider in Support of Defendant's Response in Opposition to Plaintiff's Motion for Class

Certification [DE 104] are **DENIED as moot**.

      **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, this 3rd day of March, 2014.

JAMES I. COHN
United States District Judge

Copies provided to:
Counsel of record via CM/ECF